Terry C. Bird, U.S. Atty., Charles R. Jonas, Federal Bldg., Charlotte, N.C., for defendants.

Clara **SANCHEZ–TRUJILLO**, Plaintiff,

v.

The **IMMIGRATION AND NATURALIZATION SERVICE OF the UNITED STATES DEPARTMENT OF JUSTICE,** and **Louis M. Richard,** in his official capacity as District Director, Defendants.

No. C–C–84–593–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 28, 1985.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on September 9, 1985, at Charlotte, North Carolina on the Defendants' motion to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendants were represented by Terry C. Bird. The Plaintiff was represented by Robert A. Donat.

This action stems from the rejection by the Immigration and Naturalization Service ("INS") of a petition for a second preference classification for an immigrant visa filed on January 3, 1977, by the Plaintiff's late father, Fernando Sanchez, on her behalf. After receiving the petition, the INS returned it to Mr. Sanchez on March 23, 1977, informing him that he would have to furnish the agency with a marriage certificate of himself and the Plaintiff's mother before it could adjudicate the petition. It explained that if Mr. Sanchez had never been married to the Plaintiff's mother, he would not be eligible to file a petition in the Plaintiff's behalf. On April 29, 1977, the INS sent another form to Mr. Sanchez at his last known address, which stated: "Since you have not established that the beneficiary is the legitimate child and no benefits can be bestowed on an illegitimate child by a father, the visa petition is hereby rejected." This second notice was returned to the INS by the Post Office marked "moved, not forwardable." The INS allegedly did not ever notify Sanchez of any appeal rights he might have.

The Plaintiff received a letter from the INS in 1977 stating that the petition filed by her father in her behalf had been denied because she was an illegitimate child under California law, but that if the law changed she could perhaps reapply. (Affidavit of Clara Sanchez-Trujillo.) When she entered the United States in 1982, she attempted to get her father to return to California to pursue again the earlier rejected visa petition. Mr. Sanchez was ill at the time and less than a year later committed suicide. He never returned to California prior to his death to pursue the rejected visa petition.

In her Complaint, the Plaintiff seeks reconsideration of the petition on the ground that the INS knew or should have known at the time the petition was filed that the Plaintiff was legitimated under the law of the Plaintiff's residence and/or her father's residence before her eighteenth birthday and while she was in the custody of her father; therefore, the petition should have been approved pursuant to 8 U.S.C. § 1153(a)(2)[1] and 8 U.S.C. § 1101(b)(1)(C).[2] The Plaintiff alleges that her father would have pursued the visa petition, thus paving the way for the Plaintiff to get permanent residency, but for the misinformation the INS gave him concerning the supposed marriage requirement, the INS' failure to inform him of any right to appeal he might have, and his illness. Therefore, the Plaintiff prays that this Court declare the petition filed by her father approved as of the date it was filed and that she be allowed to adjust her immigration status to that of a permanent resident.

The Defendants maintain that they cannot be held responsible for Mr. Sanchez's failure to pursue the petition any further.

They allege that the *rejection* of a petition, as opposed to a denial, did not warrant the furnishing of an appeal form to the petitioner because no decision had actually been made. The basis of their 12(b)(6) motion is that the Plaintiff, as the beneficiary of the petition rather than the petitioner, does not have standing to seek reconsideration of the petition filed and subsequently not pursued by her late father.

Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, gives any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" the right to seek federal court review of the agency action. In the context of this statute, the constitutional requirements for Article III standing are satisfied when the following three elements are present:

(1) the party seeking relief must allege an actual injury within the zone of interests protected by the statute;

(2) the injury must be fairly traceable to the specific agency action challenged; and

(3) the alleged injury must be such that it likely would be redressed by a favorable decision.

*Motor Coach Industries, Inc. v. Doe,* 725 F.2d 958, 963 (4th Cir.1984) (citing *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

 Having carefully considered the matter, the Court is of the opinion that the Plaintiff has alleged an actual injury (*i.e.,* inability to obtain preference status for an

---

**1.** 8 U.S.C. § 1153(a)(2) provides:
 (a) Aliens who are subject to the numerical limitations specified in section 201(a) shall be allotted visas or their conditional entry authorized, as the case may be, as follows:
 (2) Visas shall next be made available ... to qualified immigrants who are the spouse, unmarried sons or unmarried daughters of an alien lawfully admitted for permanent residence.

**2.** 8 U.S.C. § 1101(b)(1)(C) provides:
 (b) As used in titles I and II—

 (1) The term "child" means an unmarried person under twenty-one years of age who is—
 (C) A child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

immigrant visa, a prerequisite to applying for adjustment of status to permanent resident) that is within the zone of interests protected by the relevant statute. *See generally Hom Sin v. Esperdy*, 239 F.Supp. 903, 905–907 (S.D.N.Y.1965). The immigrant beneficiary is more than just a mere onlooker; it is her own status that is at stake when the agency takes action on a preference classification petition. *See id.* Indeed, the INS must have recognized that the Plaintiff had an interest in the petition being granted under the statute, as it sent her a letter explaining why her father's petition had been rejected and that perhaps *she* could reapply if the law changed. Thus, the Plaintiff may be considered one "adversely affected ... within the meaning of any relevant statute."

The second element is also present in that the injury the Plaintiff alleges is fairly traceable to the INS' alleged wrongful rejection of her father's petition in her behalf.

 Whether a favorable decision would likely redress the alleged injury depends on whether the death of the Plaintiff's father would nullify any retroactive approval of the petition the Court might grant, thereby rendering the Plaintiff ineligible for adjustment of her immigration status to that of permanent resident. 8 C.F.R. § 205.1 provides:

### § 205.1 Automatic Revocation.

· The approval of a petition made under Section 204 of the Act and in accordance with Part 204 of this chapter is revoked as of the date of approval ... if any of the following circumstances occur ..., if the beneficiary is an applicant for adjustment of status to that of permanent resident, before the decision on his application becomes final:

(a) *Relative petitions.*

(2) Upon the death of the petitioner or beneficiary.

(3) Upon the death of the petitioner unless the Attorney General in his discretion determines that for humanitarian reasons revocation would be inappropriate.

The statute under which this regulation is promulgated provides:

The Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under Section 204.

8 U.S.C. § 1155.

Although the regulation cited above is entitled "Automatic Revocation," subsection (a)(2) of that regulation and the statute under which the regulation is promulgated vest the Attorney General with discretion in determining whether revocation should occur. As the Second Circuit has noted, § 1155 "should not be interpreted to authorize the Attorney General's wooden application of rules for automatic revocation." *Pierno v. Immigration and Naturalization Service*, 397 F.2d 949, 950 (2d Cir. 1968). Because of the unusual circumstances of this case, the Court is of the opinion that discretion may be appropriately exercised in this case so as not to apply the rule of automatic revocation. *See Leano v. Immigration and Naturalization Service*, 460 F.2d 1260 (9th Cir.1972). Had the INS' alleged misinformation and/or misconduct not have led Mr. Sanchez to believe that any further pursuit of the petition would be fruitless, thereby precluding any possibility that the petition would be approved, the Plaintiff may well have been able to have an application for adjustment of status for permanent residency adjudicated prior to her father's death six years after the original filing of the rejected petition. Thus, the Court concludes that the third element for the satisfaction of the standing requirement is present.

NOW, THEREFORE, IT IS ORDERED that:

(1) The Plaintiff does have standing to pursue her Complaint; and

(2) The Defendants' Rule 12(b)(6) motion to dismiss is DENIED.