Ramsis GHALY, Dr., Plaintiff–Appellant,

v.

IMMIGRATION AND NATU-RALIZATION SERVICE, Defendant–Appellee.

No. 94–2261.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1994.

Decided Feb. 10, 1995.

David Rubman (argued), Chicago, IL, Donald B. Kempster, Kempster & Associates, Chicago, IL, for plaintiff-appellant.

James G. Hoofnagle, Jr., Asst. U.S. Atty. (argued), Office of the U.S. Atty., Civ. Div., Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Dr. Ramsis Farid Ghaly appeals a decision of the district court upholding a finding by the Immigration and Naturalization Service ("INS") that Dr. Ghaly was ineligible for an immigrant visa pursuant to Section 204(c)(2) of the Immigration and Naturalization Act, 8 U.S.C. § 1154(c)(2). The INS district director revoked an immigrant visa petition filed on behalf of Dr. Ghaly by the University of Illinois at Chicago upon learning that his marriage to a United States citizen was fraudulent. The INS Administrative Appeals Unit and the district court affirmed the revocation of the visa petition, and Dr. Ghaly appealed. We affirm.

## I. BACKGROUND

Dr. Ghaly is an Egyptian neuroanesthesiologist allegedly of some renown. On July 30, 1985, he married Ann Marie Wagner, a United States citizen, in a civil ceremony in Cleveland, Ohio. Shortly thereafter, Ms. Wagner filed a petition for immediate relative visa status on Dr. Ghaly's behalf. Ms. Wagner withdrew this petition on October 24, 1985. The reason she provided for the withdrawal was that she refused to go through the adjustment of status process because the marriage was fraudulent. During an interview with INS agents on January 3, 1986, Ms. Wagner signed an affidavit stating that she married Dr. Ghaly for a fee so that he could be granted permanent residency in the United States. Her affidavit stated in pertinent part that:

> [a]bout May of 1984 a man I know as Thomas Fix asked me if I wanted to make some money. He told me I could marry an alien so he could get a green card and stay in the United States. He told me I wouldn't have to live with the person and I would get some papers at my house relating to his green card. He told me I wouldn't have to have sexual relations with the person.

> He told me I would be paid $1500 for the scheme. I first met Ramsis the day we were married, July 30, 1985. I drove the two of us to get the marriage license, since he lived in Chicago we got a waiver of the

waiting period. We went across the street to the Justice Center and got married. We. then went to the Immigration office and picked up the papers, then he went to get a social security card. We had stopped earlier at the bank and Ramsis took out some money. Later that day we went to Tom's place of business and Ramsis gave Tom an envelope with money. Tom gave me $400. I later heard from Ramsis that there was $2,000 in the envelope and I understand Tom took $500. He gave me the other $1100 the next day.

I never resided with Ramsis. We never consummated the marriage. I want to withdraw the petition I filed in his behalf at this time.

On July 31, 1985 we took the papers down to Immigration and filed them. I saw him one more time to take pictures for the interview. I then decided I didn't want to go through with the scheme and I refused to go to the interview.

The marriage ended in divorce on January 28, 1986.[1]

In February 1992, the University of Illinois at Chicago (the "University") filed a visa petition with the INS seeking to employ Dr. Ghaly as a senior research specialist pursuant to Section 203(b)(2) of the Immigration and Naturalization Act (the "Act"), 8 U.S.C. § 1153(b)(2).[2] On March 16, 1992, the INS approved the University's visa petition. Some eight months later, on November 30, 1992, the INS issued a notice to the University ("Notice of Intent to Revoke"), stating that it intended to revoke the visa petition and advising the University that Dr. Ghaly's immigration file contained a sworn statement from his former wife, Ann Marie Wagner, that he married her in order to obtain per-

manent residence in the United States. The Notice of Intent to Revoke also advised the school that Dr. Ghaly was ineligible to receive a visa because the marriage had been entered into for the purpose of evading the immigration laws, in violation of Section 204(c)(2) of the Act, 8 U.S.C. § 1154(c)(2). Section 204(c)(2) prohibits the approval of a visa petition when "the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." *Id.*

On January 20, 1993, the University filed a response to the Notice of Intent to Revoke, which included a cover letter along with several affidavits and statements attesting to the validity of Dr. Ghaly's marriage to Ms. Wagner. The University contended that the INS had no basis to revoke the visa petition. The University asked the INS to provide it with a copy of Ms. Wagner's sworn statement and requested an additional thirty days to respond to that statement.

The rebuttal evidence submitted by the University in its response to the Notice of Intent to Revoke included a notarized letter written by Ms. Wagner, and dated October 8, 1992, which stated in pertinent part:

I met, dated, and shortly there after [sic] married Ramsis on July 30, 1985 in a civil ceremony in Cleveland, Ohio. We married because we honestly thought we cared about each other and could over come [sic] all obstacles.

Because we married too soon after meeting and because of our tremendous cultural differences, I could see he was not the kind of man I really wanted to spend the rest of

---

**1.** On May 13, 1986, Dr. Ghaly entered into *a second marriage to Mona Habek*, a United States citizen. After the marriage, *Ms. Habek filed a petition* for immediate relative visa status on his behalf. They separated in less than one month. On June 21, 1986, Ms. Habek withdrew the petition *"because of her feeling that this marriage was entered into by Mr. Ghali [sic] solely to foster his chances of remaining in this country."* (Emphasis added.)

**2.** Section 203(b)(2)(A) of the Act, 8 U.S.C. § 1153(b)(2)(A), creates a preferential, employment-based allocation of immigrant visas to

qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and whose services in the sciences, arts, professions, or business are sought by an employer in the United States.

my life with. It was better to divorce quickly; better for the both of us.

He was and is a fine, honest person. A person of great intelligence and good character. Although we had a bad start, I support him totally for residency in the U.S.A. He will be an asset to this country as a doctor and a human being.

The rebuttal evidence also included an affidavit signed by Dr. Ghaly which explained that he and Ms. Wagner met through a mutual friend, Thomas Fix, in Cleveland, Ohio, where Dr. Ghaly was studying for his medical licensing exam. He stated that he and Ms. Wagner became good friends and they decided to marry. Dr. Ghaly admitted his immigration status was one of the considerations involved in their decision to marry but averred: "Ann and I were both young and we cared for each other. At the time it seemed as if we would make a good team together." Dr. Ghaly denied the charge that he had arranged the marriage to evade the immigration laws, stating that:

My marriage to Ann was not fraudulent and it was not entered into as the result of my promise to pay any amount of money.... Although we may have been foolish to marry without first spending more time together, we did not get married for any fraudulent or illegal purpose.

The rebuttal evidence also included an affidavit from Thomas Fix. Mr. Fix asserted that Dr. Ghaly's marriage to Ms. Wagner was "based on mutual love and affection," and he had no reason to believe the marriage was fraudulent. The University submitted statements from other people as well. A letter from Barbara Dorsey, former coordinator of the residency training program at University Hospitals of Cleveland where Dr. Ghaly served his residency, stated that Dr. Ghaly and Ms. Wagner cared about each

other "but the extreme differences in culture plus Ann's chronic illnesses were to [sic] much to deal with all at one time." In a sworn statement in which she repeated that the marriage was not fraudulent, however, Ms. Dorsey admitted that she never actually met Ms. Wagner and thus had never even spoken with her. A letter from Craig Sumers stated that he was friendly with Dr. Ghaly and Ms. Wagner and believed "theirs' was a marriage based on mutual love and affection." Finally, the University submitted a letter from Sister Mary Nicholas, which stated that Dr. Ghaly is "a Christian, generous person, serious about his religious and professional commitments;" however, the letter made no mention of Dr. Ghaly's marriage to Ms. Wagner.

On June 10, 1993, the INS district director revoked the visa petition filed by the University on behalf of Dr. Ghaly because Dr. Ghaly "had previously entered into a marriage for the purpose of evading [the] immigration laws of the United States." Regarding the rebuttal evidence submitted on behalf of Dr. Ghaly, the district director held that: "[t]he notarized statement from the beneficiary's ex-wife [Ms. Wagner] and the other supporting documents are not sufficient to overcome the evidence in the Service's records." The district director did not respond to either the University's request for a copy of Ms. Wagner's statement or to its request for time to provide further rebuttal evidence upon receipt of the statement.

The University appealed this decision to the INS Administrative Appeals Unit ("AAU"),[3] arguing that the INS's decision was not supported by the administrative record; that the finding of marriage fraud was not supported by the findings of any judicial or administrative hearing officer or by the

---

**3.** In its Notice of Appeal, the University explained the following:

The University of Illinois is signing this Notice of Appeal in order to comply with the procedural requirements of the Immigration & Nationality Act. Because the facts regarding this matter are within the sole knowledge of [Dr. Ghaly], the University is unable to make any independent representation as to reasons for the appeal. This Notice and the subsequent written statement are being prepared by coun-

sel for [Dr. Ghaly]. Although the University of Illinois supports [Dr. Ghaly's] outstanding professional qualifications, it has no independent knowledge of his personal life or his immigration history. The University does not condone any type of marriage fraud or misrepresentation. This appeal, therefore, is being submitted in order to enable [Dr. Ghaly] to challenge the Director's findings & to demonstrate that the approval of the visa petition is not precluded by Section 204(c) of the Act.

evidence in the record; that the decision did not give adequate weight to the new evidence submitted by the University; and that the INS should not have relied on unsubstantiated investigation reports and other hearsay evidence. Since the INS had not provided the University with a copy of the administrative record or Ms. Wagner's statement, the University asked the AAU for a copy of the administrative record, and requested an additional thirty days to submit a brief and/or rebuttal evidence to the AAU after receipt of the record.

On October 7, 1993, the AAU upheld the district director's decision to revoke the visa petition filed on Dr. Ghaly's behalf by the University. The AAU found that the record contained evidence that on July 30, 1985, Dr. Ghaly entered into a marriage for the purpose of evading the immigration laws, and that Dr. Ghaly paid Thomas Fix $2,000 to arrange the marriage with Ms. Wagner. The decision quoted Ms. Wagner's 1986 statement verbatim, and concluded that because Dr. Ghaly had entered into a marriage for the purpose of evading the immigration laws, the INS was statutorily precluded from approving the petition. The AAU specifically noted that the University's response to the Notice of Intent to Revoke "was received and considered" by the INS district director. However, for reasons unexplained in the record, the AAU did not respond to either the University's request for a copy of the administrative record or to its request for time to provide further rebuttal evidence upon receipt of that record.

Dr. Ghaly next petitioned for judicial review in the district court, claiming that the

INS's decision to revoke the visa petition filed by the University on his behalf was arbitrary, capricious, an abuse of discretion, unconstitutional and in violation of Section 706(2) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).[4] The district court affirmed the INS's decision. The court ruled that the INS did not abuse its discretion and had adequately considered and weighed the University's rebuttal evidence, and that the INS's reliance on Ms. Wagner's 1986 affidavit constituted substantial evidence to support the INS's decision. Moreover, the court ruled that "[w]hile the INS could have explained its rejection of Dr. Ghaly's rebuttal evidence more fully, the INS adequately considered the evidence." Even though the court noted that Dr. Ghaly requested a remand for an opportunity to present additional evidence because the INS failed to produce Ms. Wagner's initial sworn statement, the court failed to address that contention. Dr. Ghaly appeals the decision of the district court.

## II. ANALYSIS

Dr. Ghaly initially argues that the INS abused its discretion by failing to acknowledge or consider the evidence he and the University submitted to establish that his marriage to Ms. Wagner was *bona fide*. Dr. Ghaly seeks to have the INS's decision reversed and his case remanded to the INS for reconsideration, with directions to the INS to issue a new decision taking into account all evidence of record.

We review the revocation of an alien visa petition by the INS under an abuse

---

4. Section 706(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2), provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

of discretion standard. 5 U.S.C. § 706(2)(A); *Joseph v. Landon*, 679 F.2d 113, 116 (7th Cir.1982). Under this deferential standard, the INS's decision must be upheld unless it "was made without a rational explanation, inexplicably departed from established policies or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir.1985). The INS's decision "need not be compelling, or even convincing, to be sufficient;" that the decision is reasoned is sufficient. *Id.* at 1266. The factual findings underlying the INS's decision that Dr. Ghaly's marriage to Ms. Wagner violated Section 204(c) of the Act must be supported by substantial evidence. *Patel v. INS*, 811 F.2d 377, 382 & n. 11 (7th Cir.1987) (citation omitted). Substantial evidence is evidence a reasonable mind would find adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

We hold that the INS did not abuse its discretion in this case. The INS's decision to revoke the visa petition is based upon a rational explanation, which was initially set forth in the INS's Notice of Intent to Revoke:

A review of the alien's 'A' file indicates that Mr. Ramsis Farid Ghaly married a United States citizen on July 30, 1985. The United States citizen filed a petition for adjustment of status on behalf of Mr. Ramsis Farid Ghaly on July 30, 1985. His wife withdrew the application on October 24, 1985. During an interview with his wife, she revealed that the marriage was fraudulent and she agreed to marry Mr. Ghaly for $1,500.00. She refused to go through with the adjustment of status process and they were divorced on January 28, 1986.

The Notice of Intent to Revoke stated further that:

A sworn statement from Mr. Ghaly's ex-wife [Ms. Wagner] indicates that he married her in order to obtain his Alien Registration Receipt Card (green card) and to remain in the United States. Therefore, since Mr. Ghaly sought to be accorded an

immediate relative status as the spouse of a citizen of the United States, by reason of a marriage entered into for the purpose of evading the immigration laws, Mr. Ghaly's I–140 [visa] petition approval is precluded by law under the provisions of Section 204(c) of the Immigration and Nationality Act, as amended.

After examining the rebuttal evidence filed by the University, the INS district director issued a decision revoking the visa petition, which stated, *in detail, the factual and legal grounds for the revocation:*

On February 26, 1992, you filed a Petition for Prospective Immigrant Employee with this Service on behalf of Ramsis Farid Ghaly.

That petition was approved by this office on March 16, 1992, on the basis of the statements contained on your petition and documentary evidence attached thereto. The petition was approved under Section 203(b)(2) of the Immigration and Nationality Act and forwarded to the American Embassy in Cairo, Egypt for visa issuance.

You were informed by this office in a letter dated November 30, 1992, that it was our intent to revoke the approval of your petition because *a review of Service records disclosed that the beneficiary had previously entered into a marriage for the purpose of evading the immigration laws of the United States.* On July 30, 1985, the beneficiary married à United States citizen, who filed a Petition To Classify Status Of Alien Relative For Issuance Of Immigrant Visa on his behalf on July 31, 1985. On October 24, 1985 *the United States citizen withdrew her petition for the beneficiary.* In a sworn statement, *the beneficiary's spouse revealed that the marriage was fraudulent and that she had been paid $1500.00 to marry the beneficiary. She refused to proceed with the adjustment of status, and she and the beneficiary were divorced on January 28, 1986.*

Section 204(c) of the Immigration and Nationality Act states:

... no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a

citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered [into] for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

The beneficiary's ex-wife [Ms. Wagner] has sworn under oath that *she was paid to marry him so that he could obtain an Alien Registration Receipt Card (green card) and remain in the United States.* Therefore, since the beneficiary sought to be accorded an immediate relative status as the spouse of a citizen of the United States, by reason of a marriage entered into for the purpose of evading the immigration laws, *the approval of the Petition for Prospective Immigrant Employee on his behalf is precluded by law under the provisions of Section 204(c) of the Immigration and Nationality Act, as amended.*

> Your response to our notice of intent to revoke is not sufficient to overcome the grounds of intended revocation. The notarized statement from the beneficiary's ex-wife [Ms. Wagner] and the other supporting documents are not sufficient to overcome the evidence in the Service's records. Therefore in accordance with the authority contained in Title 8, Code of Federal Regulations, Part 205.2, the petition is hereby revoked.

(Emphasis added.)

The evidence that was before the INS district director was also before the AAU. The AAU stated that the record contained evidence that on July 30, 1985, Dr. Ghaly entered into a marriage for the purpose of evading the immigration laws, and that *Dr. Ghaly paid Mr. Fix $2,000 to arrange the marriage with Ms. Wagner.* The AAU's decision, which was forwarded to Dr. Ghaly, quoted Ms. Wagner's 1986 statement verbatim, and concluded that: "In view of this statement, it must be determined that the beneficiary entered into a marriage for the purpose of evading the immigration laws. Therefore, the Service is statutorily preclud-

ed from approving this petition and the appeal must be dismissed." We are persuaded by this record that the INS provided a rational explanation for its decision.

The INS acted within its authority in relying on Ms. Wagner's 1986 statement that *Dr. Ghaly arranged to marry her for a fee in order to obtain a green card.* That arrangement was clearly set forth in the Notice of Intent to Revoke the petition, to which Dr. Ghaly submitted seven statements as rebuttal evidence. Aside from Dr. Ghaly's own affidavit, *no other rebuttal statement refutes the INS's finding that Dr. Ghaly married Ms. Wagner for a fee in order to evade the immigration laws.* The rebuttal statements from Ms. Wagner and Mr. Fix ignore this issue entirely: in her second communication to the INS, a notarized letter, *Ms. Wagner never denied her statement in her January 3, 1986 affidavit that she accepted $1500.00 in exchange for her agreement to marry Dr. Ghaly,* and in his affidavit the matchmaker Mr. Fix denied neither that he received $500 for making the marriage arrangements nor that he gave Ms. Wagner $1500 to enter into the marriage. This is hardly surprising as under the circumstances, such a denial might be considered perjury or false swearing. Thus it stands as a verity in this record that Ms. Wagner received $1500 in exchange for entering into a marriage with Dr. Ghaly and that Mr. Fix received $500 for making the marriage arrangements, for neither of these facts is denied in this record. Both of Ms. Wagner's statements, when examined for content, are truthful. Ms. Wagner may indeed have cared for Dr. Ghaly when she accepted the $1500 payment to marry him.

*The INS was entitled to discount the rebuttal statements from Dr. Ghaly, Ms. Wagner, and Mr. Fix,* since their involvement in the fraudulent marriage scheme undermines the credibility of their testimony. The INS was also entitled to disregard the rebuttal statements submitted by Barbara Dorsey, Craig Sumers, and Sister Mary Nicholas. Ms. Dorsey admitted in her affidavit that she met Dr. Ghaly for the first time when he was already separated and living apart from Ms. Wagner. Ms. Dorsey never met Ms. Wagner. Thus she was in no position to render

any judgment as to Ms. Wagner's intentions at the time she entered into the matrimonial contract. Ms. Dorsey's statement was nothing more than a statement of moral support for her former colleague. Mr. Sumers's letter likewise was of little probative value. He stated in his affidavit that he met Dr. Ghaly in July 1985, the same month that Dr. Ghaly and Ms. Wagner married. We doubt that a new acquaintance would be a credible judge of another man's true intentions for getting married. The letter from Sister Mary Nicholas merely stated that Dr. Ghaly was "a Christian, generous person" who was "serious about his religious and professional commitments." Nothing in Sister Mary Nicholas's letter suggests that she even knew about his marriage to Ms. Wagner. In sum, the INS's reliance on Ms. Wagner's first sworn statement was altogether reasonable. It is most interesting to note that Dr. Ghaly's second wife, Mona Habek, provided the INS with a written statement that she believed he married her to evade the immigration laws. Thus, it is our opinion that the INS's decision, based upon its credibility determination that Dr. Ghaly entered into a fraudulent marriage after the payment of money had substantial evidentiary support and was not an abuse of discretion.

Moreover, the record demonstrates that the INS fully considered the rebuttal evidence submitted on behalf of Dr. Ghaly. The INS district director commented that: "The notarized statement from the beneficiary's ex-wife [Ms. Wagner] and the other supporting documents are not sufficient to overcome the evidence in the Service's records." While the AAU did not discuss the other evidence in detail aside from Ms. Wagner's initial sworn statement, the AAU noted that the district director received and considered the rebuttal evidence. Specifically, the AAU commented that: "*A response was received and considered,* and the director ultimately revoked the approval of the petition." (Emphasis added.)

The record clearly establishes that Ghaly contracted a fraudulent marriage. Ms. Wagner, in a sworn statement made just a few months after she withdrew her petition for immediate relative visa status for Dr. Ghaly, stated that she received $1,500 from Thomas Fix when she married Dr. Ghaly. The INS was convinced, as are we, that Ms. Wagner's 1992 letter, submitted as part of Dr. Ghaly's rebuttal evidence, never refuted any of the facts described in her earlier sworn statement, and did nothing but confirm that she cared about Dr. Ghaly when she married him. These two statements are not inconsistent. They simply describe two different aspects of Dr. Ghaly's and Ms. Wagner's fraudulent marriage: the first statement explains the transaction itself; the second statement merely explains Ms. Wagner's feelings for Dr. Ghaly before and during their brief marriage.

Although the INS could and should have explained its rejection of the rebuttal evidence filed on behalf of Dr. Ghaly more fully, we are of the opinion that the INS adequately considered this evidence. This court has previously observed that the INS abuses its discretion only

> when it fails to weigh important factors and to state its reasons for denying relief . . . [The INS] need not, however, write an exegesis on every contention. What is required is merely that [the INS] consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.

*Vergara–Molina v. INS,* 956 F.2d 682, 685 (7th Cir.1992) (citations omitted). The record clearly demonstrates that the INS district director heard and considered rather than merely reacted, as alleged by Dr. Ghaly, as the AAU affirmed the district director's determination of the weight of the rebuttal evidence. More is not required. This court is not empowered to re-weigh the evidence or find error merely because Dr. Ghaly disputes the INS's factual finding that he entered into a fraudulent marriage. The concurrence concedes that the evidence of Dr. Ghaly's fraudulent marriage was clear, but argues that "[t]he INS did not comply with its own regulations, did not proceed rationally, and did not render a reasoned decision." In light of such clear evidence of marriage fraud, we see no reason why the INS should be required to articulate each step in its reason-

**1434**

ing. The district court concluded that the INS's decision was rational and had substantial evidentiary support, and was thus neither arbitrary nor capricious. We agree.[5]

■ Dr. Ghaly also contends that the INS's revocation of the visa petition was fatally flawed because the INS did not provide the University with Ms. Wagner's 1986 statement, and urges this court to allow him to present further argument and rebuttal evidence in support of his position. Dr. Ghaly argues that the INS's action (or inaction) deprived him of a fair opportunity to address the evidence against him and prepare an adequate defense in violation of his right of procedural due process under the Fifth Amendment of the United States Constitution.

The INS claims that it was sufficient to provide a summary of Ms. Wagner's statement, rather than the statement itself. In support of this argument, the INS cites 8 C.F.R. § 103.2(b)(3)(i), which relates to INS adjudication of petitions:

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut

the information and present information in his/her own behalf before the decision is rendered ...

The INS maintains that it complied with this regulation because the Notice of Intent to Revoke summarized the contents of Ms. Wagner's sworn statement.[6] Dr. Ghaly responds that even if this regulation is interpreted to allow the INS to give a summary of the statement in lieu of the actual statement, the regulation immediately following requires that the document itself must be disclosed: "[a] determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner ..." 8 C.F.R. § 103.2(b)(3)(ii).

The regulations do not mandate that Dr. Ghaly must be provided an opportunity to view each and every sworn statement. In this case, the INS provided a summary of the grounds sufficient in detail to explain its reasoning for the revocation of Dr. Ghaly's visa petition. The Notice of Intent to Revoke specifically stated that his ex-wife, Ms. Wagner, claimed that their marriage "was fraudulent" and that "she agreed to marry Mr. Ghaly for $1500.00." This was *the crucial evidence* marking Dr. Ghaly's marriage

---

5. The concurrence notes that we have not discussed the question of whether Dr. Ghaly is entitled to additional procedural rights, such as the right to cross-examine witnesses, generally accorded persons faced with deportation. We see no reason to address this question because neither Dr. Ghaly nor the INS presented it to the court for review. *See Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 230 (7th Cir.1992), *cert. denied*, — U.S. —, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994) (declining to consider undeveloped issues on appeal).

6. The INS also argues on appeal that the University, not Dr. Ghaly, had standing in the revocation proceedings, and consequently, Dr. Ghaly had no right to obtain a copy of the statement. Although the INS unsuccessfully challenged Dr. Ghaly's standing to bring this action in the district court, we are nevertheless bound to conduct an independent inquiry, since "an argument that a party lacks standing can be raised at any stage in the proceedings." *Gora v. Costa*, 971 F.2d 1325, 1328 (7th Cir.1992). In support of this argument, the INS cites regulations and case law addressing the issue of standing to appeal a denial or revocation of a visa petition within the INS rather than in federal court. *See, e.g.*, 8 C.F.R. §§ 103.3(a)(1)(iii)(B), 205.2(b); *In re Zai-*

*dan*, 19 I. & N. Dec. 297 (B.I.A.1985); *In re Sano*, 19 I. & N. Dec. 299 (B.I.A.1985); *In re C—*, 9 I. & N. Dec. 547 (B.I.A.1962). The INS's reliance on this authority is misplaced. Section 10 of the APA, 5 U.S.C. § 702, gives any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" the right to seek federal court review of the agency action. Having carefully considered the matter, this court is of the opinion that Dr. Ghaly has standing to bring this action because he is within the zone of interest regulated or protected by the marital fraud statute, 8 U.S.C. § 1154(c)(2), and thus is adversely affected within the meaning of the relevant statute for purposes of 5 U.S.C. § 702. *See Taneja v. Smith*, 795 F.2d 355, 358 n. 7 (4th Cir.1986); *Stenographic Machines, Inc. v. Regional Administrator for Employment and Training*, 577 F.2d 521, 527–28 (7th Cir.1978); *Sanchez–Trujillo v. INS*, 620 F.Supp. 1361, 1363 (W.D.N.C.1985) (noting that "[t]he immigrant beneficiary is more than just a mere onlooker; it is [his] own status that is at stake when the agency takes action on a preference classification petition").

to Ms. Wagner as fraudulent. The fact that Dr. Ghaly's fraud could be summarized in a single sentence does not render that summary insufficient to put him on notice of the grounds for revocation of his visa petition. The INS explained its intentions plainly and clearly: to revoke its approval of Dr. Ghaly's visa petition based on his fraudulent marriage.

The concurrence observes, erroneously, that "[t]he University and Ghaly never had a chance to comment on the ex-wife's [Ms. Wagner's] sworn statement...." To the contrary, both the University and Dr. Ghaly received the INS's Notice of Intent to Revoke, which in no uncertain terms noted that Ms. Wagner had agreed to marry Dr. Ghaly for $1500.00. The University and Dr. Ghaly had the opportunity to comment on Ms. Wagner's statement and took advantage of that opportunity by submitting seven statements, six of which attested to the validity of Dr. Ghaly's marriage to Ms. Wagner. It is more than evident that Dr. Ghaly did know of the information contained in Ms. Wagner's statement in the Notice of Intent to Revoke for he in fact responded with the submission of seven statements, each and every one attempting to deal with the issue of his intent at the time he entered into the contested marriage. Aside from Dr. Ghaly's own affidavit, no other rebuttal statement refuted that Dr. Ghaly arranged to marry Ms. Wagner for a fee in order to obtain his green card. Thus, Dr. Ghaly was afforded a full opportunity to rebut the information on which the INS's decision was based, and his contention that he was prejudiced by not receiving Ms. Wagner's actual statement is without merit. Obviously, the better procedure would and should have been for the INS to produce the statement in question, and in the future we strongly urge the Department to produce the statement absent a showing of good cause on the part of the Department and why such statement or exhibit should not be produced. We are in total agreement with the concurring judge's belief that the INS should be more forthcoming in providing the documentation upon which it relies in revocation proceedings. We also understand and agree with the concurring judge's concern that the INS relies all too often as in this case on its discretionary authority without providing reasoned explanations for its decisions. However, in the instant case the failure of the Department to produce the statement in its entirety is not fatal for the summary given to the plaintiff-appellant was accurate, and sufficiently clear and direct as evidenced by the rebuttal letters (7) submitted by the University.

## III.  CONCLUSION

We hold that the INS provided a rational explanation, supported by substantial evidence, for its revocation of its approval of Dr. Ghaly's visa petition, and thus did not abuse its discretion. In addition, we are of the opinion that the INS's summary of Ms. Wagner's affidavit provided sufficient notice to Dr. Ghaly of the grounds for its revocation of its approval of his visa petition.

The decision of the district court is AFFIRMED.

POSNER, Chief Judge, concurring.

I am deeply troubled by the procedure employed by the Immigration and Naturalization Service in denying an immigrant visa to Dr. Ghaly and by the unreasoned character of the Service's decision. But Judge Coffey's opinion is persuasive that the Service's errors were harmless.

Dr. Ghaly is a distinguished neuroanesthesiologist whom the University of Illinois would like to employ. The University filed a petition with the INS for an immigrant visa for Dr. Ghaly. The petition complied with all the requirements for such a visa and was approved. A few months later, however, the INS notified the University that it intended to revoke the petition because "a sworn statement from Mr. Ghaly's ex-wife [Wagner] indicates that he married her in order to obtain his Alien Registration Receipt Card (green card) and to remain in the United States." The notice of intent to revoke also states that Wagner claimed to have been paid $1,500 to marry Dr. Ghaly.

If an alien attempts or conspires to enter into a marriage for the purpose of evading the immigration laws, he is ineligible for an

immigrant visa. 8 U.S.C. § 1154(c)(2). This means that he can never become a citizen of the United States or even reside permanently in this country. It does not matter whether he used the marriage to obtain a visa; Ghaly did not. It is enough that he married—or even just attempted or conspired to marry—with the forbidden purpose.

This is a harsh law, and one would expect the government in enforcing it to make at least modest efforts to guard against mistakes. It is surprising, therefore, that the INS did not make available to the University or to Dr. Ghaly the affidavit of his ex-wife on which the notice of intent to revoke was based. The University requested a copy of the statement but was refused. The University tried to rebut the notice of intent as best it could without having seen the evidence on which the notice was based. It obtained a notarized statement from Wagner in which she said, "We married because we honestly thought we cared about each other and could overcome all obstacles. Because we married too soon after meeting and because of our tremendous cultural differences, I could see he was not the kind of man I really wanted to spend the rest of my life with." Among other rebuttal materials was an affidavit from Ghaly denying any fraudulent purpose for the marriage.

The first-line judicial officer to whom the case was submitted ordered Ghaly's visa revoked on the basis of the ex-wife's sworn statement. All he said with respect to the rebuttal evidence was, "Your response to revoke is not sufficient to overcome the grounds of intended revocation. The notarized statement from the beneficiary's [Ghaly's] ex-wife and the other supporting documents are not sufficient to overcome the evidence in the Service's records." Why these materials were insufficient was not explained. The contents of the sworn statement, which appears to be the only evidence on the basis of which the visa was revoked, were not revealed, or even summarized, although as I have mentioned the notice of intent to revoke indicated that the ex-wife had claimed to have been promised $1,500 to go through with the marriage.

The University appealed, as it was entitled to do, to an appellate board of the INS. Since it still had not seen the ex-wife's statement that was, so far as appears, the sole evidence on which the first-line judicial officer had relied in concluding that Ghaly had made a fraudulent marriage, the University asked the board for a copy. The board did not respond. Instead it issued an order dismissing the appeal. The order quotes from the ex-wife's sworn statement. It is unclear how much of the statement was quoted, but in the quoted passage she says that she had received $1,500 for marrying Ghaly so that he could obtain a green card. Right after the quotation the order states, "In view of this statement, it must be determined that the beneficiary entered into a marriage for the purpose of evading the immigration laws. Therefore, the Service is statutorily precluded from approving this petition." End of discussion. And end of the administrative process. The University and Ghaly never had a chance to comment on the ex-wife's sworn statement as such, as distinct from the hint of its content in the notice of intent to revoke. They saw the actual statement—part of it anyway—for the first time in the order dismissing the appeal. So Dr. Ghaly is forever barred from becoming a citizen or permanent resident of the United States.

The Attorney General may revoke the approval of a visa petition "for what he deems to be good and sufficient cause." 8 U.S.C. § 1155. The procedures that he (which is to say the INS, to which he has delegated this authority) is to employ in deciding whether there is good cause to revoke are not prescribed in the Immigration and Nationality Act. But the INS has issued regulations that require that the alien receive notice of intent to revoke the petition and an opportunity to offer evidence, that there be "substantial and probative" evidence of marriage fraud, and that this evidence be disclosed to the alien unless it is confidential, in which event a summary will suffice. 8 C.F.R. §§ 103.2(b)(3)(ii), (iv), 204.2(a)(1)(ii), 205.2. The government concedes that the INS is required to follow procedures rationally adapted to the search for truth and to reach reasoned decisions, and that if it fails to do so—if, in the language of administrative law,

its decision is "arbitrary and capricious"—we must reverse. *Joseph v. Landon,* 679 F.2d 113, 116 (7th Cir.1982) (per curiam). The INS did not comply with its own regulations, did not proceed rationally, and did not render a reasoned decision. It dishonored the rule of law.

The refusal to show the University of Illinois Wagner's sworn statement is inexplicable, offensive, and absurd, as well as contrary to the INS's regulations. "[A] determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner." 8 C.F.R. § 103.2(b)(3)(ii). The exception for classified information is not claimed to be applicable here. *Suciu v. INS,* 755 F.2d 127 (8th Cir.1985) (per curiam).

An agency's failure to follow its own regulations is reversible error even if the agency could have adopted different regulations, provided that the error was prejudicial. E.g., *Fort Stewart Schools v. Federal Labor Relations Authority,* 495 U.S. 641, 654, 110 S.Ct. 2043, 2050–51, 109 L.Ed.2d 659 (1990); *Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *American Petroleum Institute v. EPA,* 906 F.2d 729, 742 (D.C.Cir.1990). At first glance it seems plain that it was here. The ex-wife's statement was, so far as appears, the *entire* evidence on which the notice of intent to revoke Ghaly's visa was based. Without seeing it—with only a hint of its contents—the University was in a weak position to rebut it. Even if the INS has no obligation to give people an opportunity to rebut charges of fraud—even if it can operate completely *in camera*—it accorded the University a right of rebuttal in its regulations only to dilute the right by refusing to disclose the evidence that had to be rebutted. It gave with one hand and took away with the other. There is no suggestion that the ex-wife's statement was privileged. The INS was playing cat and mouse with the University and Ghaly.

The other lapse of rationality is the INS's failure to give reasons for its decision to revoke the visa on the basis of the evidence before it. If a matter is in dispute, an administrative agency, even the INS, has to give a rational explanation for resolving the dispute one way or another, unless the explanation is obvious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); *Schurz Communications, Inc. v. FCC,* 982 F.2d 1043, 1049 (7th Cir.1992); *Zaluski v. INS,* 37 F.3d 72, 74 (2d Cir.1994); *Yepes–Prado v. INS,* 10 F.3d 1363, 1366, 1370 (9th Cir.1993). Otherwise it is impossible for a reviewing court to determine whether the agency's decision is reasoned, and we all agree that the INS is not exempt from the obligation to make reasoned decisions. Neither the first-line judicial officer nor the appellate board gave reasons for ruling against the University and Ghaly. The judicial officer merely announced a conclusion: that the rebuttal documents were insufficient to overcome the ex-wife's sworn statement. He did not say why they were insufficient. He had before him two seemingly inconsistent statements by the ex-wife plus a number of other affidavits which supported the second of her statements, the one favorable to Ghaly. It is true, as the majority opinion points out, that the ex-wife's statements may not be inconsistent. The second did not deny that she had received money to marry Dr. Ghaly. It merely denied that there had been no hope that the marriage might succeed. The judicial officer did not mention this possible basis for reconciling the two statements, however, and we are not supposed to do his reasoning for him. *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 459–60, 87 L.Ed. 626 (1943); *Rodriguez–Barajas v. INS,* 992 F.2d 94, 97–98 (7th Cir.1993); *Amax Coal Co. v. Franklin,* 957 F.2d 355, 357 (7th Cir.1992).

Neither the first-line officer's decision nor the appeal board's contains reasons, but the appeal board's decision is worse because it implies that the INS is not *permitted* to consider rebuttal evidence. The decision stated, recall, that "In view of this statement [the ex-wife's first statement], it *must be determined* that the beneficiary entered into a marriage for the purpose of evading the immigration laws" (emphasis added). The implication is not that the first statement was more credible than the contrary evidence but

that the existence of that statement compelled the revocation of Ghaly's visa no matter how credible the other evidence in the record was. This would be irrational. It would mean that the INS would have to revoke a visa on the basis of allegations that the Service itself disbelieved. The appeals board may not have meant anything so stupid; but I cannot figure out what it did mean from the little it said.

The procedural sloppiness demonstrated by the INS in this case, although extraordinary, is not grounds for reversal if it is clear that Ghaly contracted a fraudulent marriage. The rule of harmless error applies to our review of administrative decisions, just as it does to our review of decisions by federal district courts. *Sahara Coal Co. v. Office of Workers' Compensation Programs*, 946 F.2d 554, 556 (7th Cir.1991). There is no point in remanding an administrative decision for a better statement of reasons if the decision on remand is a forgone conclusion, or for further evidentiary proceedings if the outcome of those proceedings is equally foreordained. Cf. *Ortiz–Salas v. INS*, 992 F.2d 105 (7th Cir.1993). Judge Coffey's opinion persuades me that a remand would indeed be pointless, that it could come out only one way, and that adverse to Ghaly. I reach this conclusion with reluctance. I am reluctant to condone the abuse of administrative process disclosed by the INS's handling of this case. But I have no choice. The failure of either the ex-wife or the marriage broker to deny that substantial money passed from Ghaly to Wagner, and the second fraudulent marriage, are the clinchers. It is true that in preparing her second statement Wagner did not have access to the first, the one on which the INS was relying. The INS had however advised Ghaly and the University, in its notice of intent to revoke the visa petition, that she had said that she had been paid to marry Ghaly. If she had not been paid, she could be expected to deny it in her second statement. She did not deny it. With all the other evidence, her receipt of $1,500 to marry Ghaly must be reckoned conclusive proof of the fraudulent character of the marriage.

It is arguable, though I think only weakly, that since Dr. Ghaly will have no defense to

deportation if his immigrant visa is revoked on the basis of a fraudulent marriage, he is entitled to some of the additional procedural rights, such as that of cross-examination, accorded persons faced with deportation. 8 U.S.C. § 1252(b)(3); see *Olabanji v. INS*, 973 F.2d 1232, 1234–36 (5th Cir.1992); *Cunanan v. INS*, 856 F.2d 1373, 1375 (9th Cir. 1988). As Judge Coffey notes, the point has not been raised and we are therefore not obliged to consider it. I doubt that if accepted it would change the result in this case. The evidence of fraud is conclusive.