[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12204
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-02474-MSS-TGW


LEYLA ROJAS,

                              Plaintiff - Appellant,


versus

SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
ALEJANDRO MAYORKAS,
Director, Citizenship and Immigration Services,
KAREN FITZGERALD, Director,
Vermont Service Center,

                              Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 17, 2017)

Before TJOFLAT, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Leyla Rojas seeks lawful permanent residence in the United States. To obtain this status, she filed a Form I-360 "Petition for Amerasian, Widow, or Special Immigrant" in which she asked the United States Citizenship and Immigration Service to classify her as an abused or battered spouse of a United States citizen. The USCIS denied her petition because she had tried to obtain United States citizenship through a prior marriage that had been fraudulently entered into for the purpose of evading immigration law.

Ms. Rojas filed suit in the district court, claiming that the USCIS' denial was erroneous. Both sides moved for summary judgment and the district court granted summary judgment in favor of the government. On appeal, Ms. Rojas contends that the USCIS' determination that she had previously entered into a sham or fraudulent marriage and its denial of her I-360 petition on that ground were not based on substantial evidence. After reviewing the record, we affirm.

**I**

Because we write for the parties, we assume their familiarity with the underlying facts of the case and recite only what is necessary to resolve this appeal.

Ms. Rojas was previously married to Henry Correa, a United States citizen. The two began dating in August of 2006 and were married two months later. Approximately one month after the marriage, Mr. Correa filed a Form I-130 "Petition for Alien Relative" on Ms. Rojas' behalf, seeking to have her classified

2

as an immediate relative of a United States citizen. At the same time, Ms. Rojas filed an "Application to Register Permanent Residence or Adjust Status" predicated on the I-130 petition. In addition to submitting documentation evidencing the marriage, Mr. Correa and Ms. Rojas were also interviewed by immigration officers.

During an interview in March of 2007, Mr. Correa executed a sworn affidavit in which he made several statements admitting that his marriage with Ms. Rojas was fraudulent. More specifically, Mr. Correa admitted that (1) he did not live with Ms. Rojas but instead lived with his girlfriend, to whom he was engaged and planning to marry in 2007; (2) Ms. Rojas asked him to marry her so she could obtain a residence card; (3) he agreed to marry Ms. Rojas as a favor; (4) he did not know Ms. Rojas' current address; (5) he and Ms. Rojas never consummated the marriage; and (6) he and Ms. Rojas submitted a residential lease agreement listing them as residing together in order to "prove that [they were] married." Following execution of the sworn affidavit, Mr. Correa withdrew the I-130 application, admitting that "[he] entered into the marriage with [Ms. Rojas] for the purpose of circumventing the Immigration Laws of the United States." As a result, the USCIS denied Ms. Rojas' application to adjust status.

Mr. Correa filed for divorce from Ms. Rojas in June of 2007, and the divorce was finalized on October 11, 2007. In January of 2008, after Mr. Correa withdrew

his I-130 petition, the government commenced removal proceedings against Ms. Rojas due to the sham marriage, but those proceedings were later terminated after an immigration judge found that the government failed to meet its burden of showing that Ms. Rojas engaged in marriage fraud.

On December 1, 2009, Mr. Correa recanted his initial affidavit. He did so with a second sworn affidavit. The second affidavit was short and nowhere as detailed as his first. In it Mr. Correa alleged that immigration officers coerced him into executing the initial affidavit by threatening him with incarceration and taking his children away. According to Mr. Correa, "[he] felt [he] had no choice but to sign a document pushed in front of [him] or have [Ms. Rojas] locked up somewhere."

Ms. Rojas married Mohammad Waliagha on December 8, 2009, a few days after Mr. Correa executed the second affidavit. Mr. Waliagha then filed an I-130 via petition on her behalf in January of 2010. But on September 27, 2011, Mr. Waliagha withdrew the I-130 petition, indicating that he had filed for divorce from Ms. Rojas.

On October 28, 2011, Ms. Rojas filed the I-360 petition underlying this action, in which she sought classification as a battered spouse of Mr. Waliagha. On June 20, 2013, the USCIS notified Ms. Rojas of its intent to deny her petition because she had previously entered into a sham marriage for the purpose of

4

evading United States immigration laws, and invited her to submit additional evidence in rebuttal. In response, Ms. Rojas submitted the second affidavit executed by Mr. Correa in December of 2009. On August 21, 2013, after reviewing her supporting documentary evidence, as well as the evidence concerning her first I-130 petition, the USCIS denied Ms. Rojas' I-360 petition.

In the district court, Ms. Rojas argued that the USCIS' determination was not supported by substantial evidence, that the USCIS had incorrectly based its decision on Mr. Correa's first affidavit without considering all the relevant information, and that the government had previously failed to establish that her marriage to Mr. Correa was fraudulent. The district court, adopting the magistrate judge's report and recommendation, granted summary judgment in favor of the government, concluding that Ms. Rojas failed to demonstrate that the USCIS' determination was not based on substantial evidence.

## II

We review the district court's grant of summary judgment de novo. *See Shuford v. Fid. Nat. Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

5

Under the Administrative Procedure Act, the USCIS' denial of Ms. Rojas' visa petition may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). *See also Sanchez Jimenez v. U.S. Atty. Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007) ("[We] must affirm the [agency's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."). We may not "conduct [our] own investigation and substitute [our] own judgment for the administrative agency's decision." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs.*, 87 F.3d 1242, 1246 (11th Cir. 1996). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

### III

The alien spouse of an abusive United States citizen may self-petition for classification as an immediate relative or a preference immigrant by filing a Form I-360. *See* 8 C.F.R. § 204.1(a)(3). Regardless of the merits of such a petition, however, federal law prohibits the USCIS from approving a visa petition if it determines "that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). The petitioner

6

bears the burden of proving her eligibility for relief by a preponderance of the evidence. *See* 8 U.S.C. § 1361. *See also Matter of Pazandeh*, 19 I. & N. Dec. 884, 887 (BIA 1989). So, "where there is reason to doubt the validity of the marital relationship, the petitioner must present evidence to show that the marriage was not entered into for the purpose of evading the immigration laws." *Matter of Laureano*, 19 I. & N. Dec. 1, 3 (BIA 1983).

The USCIS must consider any credible evidence relevant to the petition. *See* 8 U.S.C. § 1154(a)(1)(J); INA § 204(a)(1)(J); 8 C.F.R. § 204.1(f)(1). But the determination of which evidence is more credible, and the weight to be given to that evidence, is committed to the sound discretion of the USCIS. *See* 8 U.S.C. § 1154(a)(1)(J).

The USCIS denied Ms. Rojas' I-360 petition because it determined, after considering the totality of the evidence, that Ms. Rojas had previously married Mr. Correa in order to evade United States immigration laws. On this record, we see no basis for overturning the district court's grant of summary judgment in favor of the government.

Ms. Rojas' primary argument is that the USCIS erroneously overemphasized Mr. Correa's first affidavit. She contends that Mr. Correa's second affidavit cancels out the first one, and that the rest of the evidence she submitted demonstrates that their marriage was not fraudulent. According to Ms. Rojas, had

7

the USCIS properly ignored Mr. Correa's first affidavit, it would have had no substantial evidence from which to conclude that their marriage was fraudulent. Ms. Rojas also argues that the USCIS should have considered the outcome of the failed removal proceeding, in which an immigration judge determined that the government had failed to show that Ms. Rojas' marriage to Mr. Correa was fraudulent. As we explain, Ms. Rojas' arguments fail.

For starters, the outcome of the removal proceeding does not mandate a decision in Ms. Rojas' favor. First, the USCIS is required to make its own, independent determination. *See Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990) (explaining that the agency must make an "independent conclusion based on the evidence [in the record]"). Second, the burden in a removal proceeding rests with the government, whereas the burden for obtaining relief here rests with Ms. Rojas. *See Adefemi*, 386 F.3d at 1027 & n.9.

In addition, and contrary to Ms. Rojas' contention, it is clear that the USCIS considered other evidence besides Mr. Correa's first affidavit. In its August 2013 letter, the USCIS explicitly cited to various documents submitted by Ms. Rojas and explained why it found those documents unconvincing. Ms. Rojas had an opportunity, by way of the USCIS' June 2013 letter, to submit additional evidence to convince the USCIS that its initial conclusion that the marriage was fraudulent was incorrect.

8

The USCIS could properly conclude that Mr. Correa's recantation did "not overcome the exceedingly detailed [initial] statement." D.E. 1-2 at 10. Courts have consistently recognized that a generalized recantation that fails to refute earlier admissions does not undermine the initial confession. *See, e.g.*, *Ghaly v. I.N.S.*, 48 F.3d 1426, 1433 (7th Cir. 1995) (discounting ex-wife's subsequent statement because it "never refuted any of the facts described in her earlier sworn statement"). Though Mr. Correa's second affidavit generally disavows his initial admissions, it does not address several compromising facts disclosed in the initial affidavit, such as his engagement to another woman, the couple's failure to consummate the marriage, the circumstances under which he and Ms. Rojas met, and Ms. Rojas' overture that they marry so she could obtain permanent residency. These glaring omissions could certainly render the second affidavit suspect. *See id.* at 1432 (explaining that a recantation may not directly refute a previous sworn statement because "such a denial might be considered perjury or false swearing").

Ms. Rojas is also incorrect that Mr. Correa's initial affidavit is completely uncorroborated such that, but for that affidavit, the USCIS' denial would not be based on substantial evidence. Several other facts extrinsic to the initial affidavit corroborate Mr. Correa's admissions, including the short-lived nature of the couple's relationship and the fact that Mr. Correa did not know Ms. Rojas' whereabouts after their divorce, forcing him to effectuate service of the divorce by

9

publication.  *Cf. Rodriguez Del Carmen v. Gonzales*, 441 F.3d 41, 43 (1st Cir. 2006) (holding sham-marriage finding supported by substantial evidence where spouse could not "recall important details of her putative married life, such as the address of her joint habitation with [her husband]").

Ms. Rojas, in effect, argues that the USCIS should have viewed the evidence differently.    Though some documentary evidence submitted by Ms. Rojas, including joint tax returns, bank accounts, and insurance documents, admittedly suggests a bona fide marriage, the USCIS considered much of that evidence and found it insufficient.  Given the standard of review, we are statutorily precluded from reweighing the evidence.  *See* 8 U.S.C. § 1154(a)(1)(J); 8 C.F.R. § 204.1(f)(1).

Finally, Mr. Correa's generalized claim of duress, by itself, is insufficient to compel a different result.  *See Matter of Isber*, 20 I. & N. Dec. 676, 679 (BIA 1993) (explaining that the spouse's "general claim of duress is insufficient to retract her detailed admissions as to the fraudulent nature of her marriage").  *See also Sehgal v. Lynch*, 813 F.3d 1025, 1030–31 (7th Cir. 2016) (finding that allegations of coercion, including being threatened "with all kinds of things" and being forced to sign a statement without first reading it, were too vague to undermine a prior confession that the marriage had been fraudulent).  This is

10

especially true where, as here, the statement in which the coercion allegation is made does not specifically deny or explain away the initial facts admitted.

## IV

Because the USCIS' decision is supported by substantial evidence, we conclude that the district court did not err in granting summary judgment in favor of the government.

**AFFIRMED.**