577 F.2d 521
 STENOGRAPHIC MACHINES, INC., Plaintiff-Appellant,
v.
REGIONAL ADMINISTRATOR FOR EMPLOYMENT AND TRAINING (A/K/A
Regional Manpower Administrator) of the United
States Department of Labor, Defendant-Appellee.
Mohammed Abdul RAHMAN, Plaintiff-Appellant,
v.
REGIONAL ADMINISTRATOR FOR EMPLOYMENT AND TRAINING (A/K/A
Regional Manpower Administrator) of the United
States Department of Labor,
Defendant-Appellee.
 Nos. 77-1527, 77-1837.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 20, 1978.
Decided Aug. 10, 1978.
 
 Samuel D. Myers, Chicago, Ill., for plaintiffs-appellants.
 William F. Murphy and Mary M. Thomas, Asst. U. S. Attys., Chicago, Ill., for defendant-appellee.
 Before SWYGERT, CUMMINGS and TONE, Circuit Judges.
 TONE, Circuit Judge.
 
 
 1
 In each of these cases the plaintiff seeks to set aside an administrative determination under § 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14), denying an application from an employer for an alien employment certification. In each case the District Court sustained the administrative determination. We affirm the judgments.
 
 Section 212(a)(14) provides as follows:
 
 2
 Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 
 
 3
 (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.
 
 
 4
 The Secretary of Labor has delegated determination and certification responsibilities to the several Regional Administrators for Employment and Training, also known as Regional Directors for Manpower, of the United States Department of Labor. In the cases before us the Regional Administrator in Chicago has refused to certify that there are insufficient workers in the United States who are able, willing, qualified, and available, at the time of application for a visa at the place to which the alien is destined to perform his unskilled labor.
 
 No. 77-1527
 
 5
 Stenographic Machines, Inc., plaintiff in No. 77-1527, applied to the Department of Labor's Alien Importation Clearance and Manpower Services for an alien employment certification as a "precision grinder" for Syed A. Majid, who apparently had entered the United States as a student. Stenographic had hired Majid for the job in question some 28 months before filing its application. In responding to an inquiry on the application form concerning efforts made to fill the job, Stenographic replied, "We tried to recruit experienced employees through Illinois Employment Service and newspaper ads with no success." Majid had thereafter been hired.
 
 
 6
 Illinois State Employment Service (ISES), to which the application was referred as required by 29 C.F.R. § 60.3(c), informed Stenographic that qualified American workers registered with ISES were available and suggested that a job bank order be placed with ISES. ISES also advised Stenographic that the wage offer was below the prevailing rate for this occupation. Stenographic responded that it had increased the wage for Majid, but it did not seek an employee through the ISES' job bank.
 
 
 7
 ISES then forwarded the file to the Assistant Regional Director for Manpower of the United States Department of Labor, reporting the above facts. A Manpower Administration Analyst completed a form, which appears in the administrative record, reciting that the "Local and State office information" was "sufficient for making a determination" for the reason that
 
 
 8
 The State Employment Service offers employment assistance. Each applicant is screened to determine his occupational category in accordance with the applicant's qualifications and experience.
 
 
 9
 The analyst also reported that she had telephoned a "Mr. Zabarae, Metal Polishers, Buffers & Platers Local # 6," in Chicago and he "could not give specific number of operation production grinders available, but says 40% Of those under his jurisdiction are out of work." Finally, the analyst concluded, the request "is denied . . . on the basis of availability," and followed with a recital that ISES had "report(ed) qualified workers in their active application files," and "(w)orkers are also available at" the local union mentioned above.
 
 
 10
 An acting certifying officer then notified Stenographic that a certification could not be issued because of the availability of workers in the United States who were able, willing, and qualified. Under the heading "Reasons for Denial" on the printed form used for the notice, it was stated that ISES "reports nine . . . qualified workers in their active application files,"[1] and that "workers are also available at" the local union.
 
 
 11
 Stenographic pursued an administrative review under 29 C.F.R. § 60.4(b). Before doing so, its counsel sought to obtain the names of the workers who were reported available by ISES, but the Administrator said he did not have that information, and ISES took the position that disclosure was prohibited by Illinois law. In its presentation to the reviewing officer, Stenographic challenged the accuracy of the ISES report and the information obtained from the union, and submitted rebuttal evidence consisting of newspaper advertisements for qualified grinders contemporaneous with the application, ISES projections to the effect that in Chicago there would be 8,000 such jobs, almost 3,000 of them new, by 1980, and information to the effect that approximately two weeks after reporting grinders available, ISES had advertised over the radio that grinder jobs were open. The reviewing officer denied certification on the same two grounds relied upon by the certifying officer and the analyst, Viz., the ISES data and the telephone statement by a representative of the local union. Although acknowledging that the ISES data was weak, standing alone, the reviewing officer found confirmation in the union representative's statement.
 
 
 12
 Stenographic then brought an action in the District Court to set aside the denial of the alien employment certification. The court, relying upon Stenographic's failure to place a job bank order and the buttressing information obtained from the local union, entered summary judgment in favor of the Administrator.
 
 Standard of Review
 
 13
 The Regional Administrator's order denying certification must be sustained unless, in the words of § 10(e)(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The inquiry is whether the administrative decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "whether the Secretary's action followed the necessary procedural requirements." Secretary of Labor v. Farino, 490 F.2d 885, 889-890 (7th Cir. 1973), quoting from Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-417, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).
 
 The Merits
 
 14
 Several decisions of this court have held that the Regional Administrator's denial of an alien labor certificate solely on the basis of employee-availability statements by ISES constituted an abuse of discretion, when the reliability of those statements was challenged and the record did not show them to be reliable. Shuk Yee Chan v. Regional Manpower Administrator, 521 F.2d 592 (7th Cir. 1975); First Girl, Inc. v. Regional Manpower Administrator, 499 F.2d 122, 124 (7th Cir. 1974); Secretary of Labor v. Farino, supra, 490 F.2d at 889; see also Bitang v. Regional Manpower Administrator, 351 F.Supp. 1342, 1344 (N.D.Ill.1972).[2] In these cases the records showed merely that ISES had reported there were given numbers of persons who were "able, willing, qualified and available" to perform the work in question. In none of the cases did the record disclose the procedures used by the state agency for gathering and maintaining the data on which that conclusion was based. In none of them had the prospective employer, after being notified by ISES of the availability of American workers, refused to submit a job bank order to ISES.[3] Stenographic relies upon these authorities in arguing that the ISES information could not properly be a basis for the denial of the certificate.
 
 
 15
 In the case before us, the Regional Administrator has filed a brief explaining how employment information is gathered by ISES, which is both supervised and provided with required performance standards by the United States Employment Service, a Bureau of the Department of Labor, and how the accuracy and currency of the information is maintained.[4] We are informed that the supervising federal agency requires state agencies to adhere to federal standards, which are established in accordance with the Federal Employment Manual Guidelines, and further insures uniformity of data compilation by requiring the use of the Dictionary of Occupational Titles. We are further advised in considerable detail of the computerized Employment Security Automated Reporting System (ESARS), and how the ESARS data is initiated, including the interviewing by trained interviewers of American workers applying to state agencies for assistance in obtaining employment to determine whether the applicants have the minimum qualifications for the occupation in question. Finally, we are informed of the state agencies' mandatory adherence to procedures for keeping information about applicants up to date by frequently purging the files of names of applicants who are no longer seeking employment. We are also told by the Administrator, however, that "ESARS were (sic) not used in this case."[5] The Regional Administrator has also supplied us with a copy of an unpublished opinion by District Judge Prentice H. Marshall holding, on the basis of a record before him showing the facts just summarized, that the procedures employed by ISES for gathering and maintaining data are sufficient to assure their reliability, and that the Regional Administrator is therefore justified in relying upon such data as a basis for refusing an alien labor certificate. Ana May-Ling Tan v. Regional Administrator, No. 76-C-3394 (N.D.Ill., Aug. 19, 1977).
 
 
 16
 In the case before us, however, the record does not show that the procedures used by the state agency are as represented by the brief of counsel for the Regional Administrator. As noted above, that brief states that ESARS was not used in this case, which may mean that the screening and updating procedures used in initiating data were not used. At any rate, we cannot tell from the record that they were. In addition to the record, we have examined the materials referred to in the brief of which we might conceivably take judicial notice.[6] We have been unable to find any basis on which we may properly rely for finding that the procedures Judge Marshall found had been followed in the Ana May-Ling Tan case were followed in collecting and maintaining the ISES information on which the Administrator relied in the case before us. Accordingly, we cannot say that this record shows the reliability of the ISES information.
 
 
 17
 For several reasons, however, that conclusion does not lead us to hold that the administrative determination should be set aside. To begin with, Stenographic has not questioned, here or in the administrative proceeding, the reliability of the procedures used by ISES for determining whether there are qualified American workers available for the job, as distinguished from the fact that such workers were available.[7] Its argument in the administrative proceeding was not that the ISES procedures were deficient but that it was entitled to have the Regional Administrator or ISES identify the nine available workers so it could interview them and perhaps obtain statements from them. We do not think the Regional Administrator is required to go that far, at least when, as here, no issue is made as to the procedures used by ISES in gathering and maintaining its data, and the employer refuses to submit a job bank application that would quickly resolve the question of whether any qualified American workers were available.[8] In addition, the report of information obtained from the local union, although lacking various indicia of trustworthiness that a court would require,[9] adds some corroboration to the ISES data. The rebuttal evidence introduced by Stenographic, although indicating that there were job openings for grinders, did not necessarily show that there were not enough unemployed American grinders to fill those jobs. Considering the entire record, we are unable to say that the Regional Administrator has acted arbitrarily or capriciously, made a clear error of judgment, or abused his discretion.
 
 
 18
 Stenographic also argues, as does Rahman in No. 77-1837, that the number of qualified and available American workers reported by ISES is De minimis, citing Bitang v. Regional Manpower Administrator, Supra, 351 F.Supp. at 1345. In Bitang the plaintiffs were aliens currently residing in the United States who sought immigrant visas for permanent residence under 8 U.S.C. § 1153(a)(3). In addition to meeting the requirements of that section, they were required to obtain certificates under 8 U.S.C. § 1182(a)(14). The record before the court indicated that no attempt had been made by the state agency to verify the qualifications of supposedly available workers or whether they were presently employed. In that context, the court held that the listing of a relatively small number of available workers in an occupation in which many people were employed was insufficient "when combined with the lack of evidence that those listed were in fact 'able,' 'qualified,' and still 'available.' " The ruling was addressed to the probative value of the evidence in that case and does not support the proposition plaintiffs assert here, Viz., that more than a small number of available workers are necessary to make § 212(a)(14) applicable.
 
 No. 77-1837
 
 19
 The application in No. 77-1837, which also sought certification with respect to the occupation of grinder, was filed by American Grinding and Machine Company on behalf of Mohammed Abdul Rahman, who is the plaintiff in the case before us. At the time the application was filed, January 13, 1976, Rahman had been employed by the company for about one and one-half years. Before hiring him, the company had advertised for applicants for the job and unsuccessfully placed a job bank order with ISES.
 
 
 20
 Upon receipt of the application, that agency notified American Grinding that one qualified worker was available. The company declined, however, to place a new job order. ISES then forwarded the file to the Office of the Regional Administrator, reporting the foregoing information.
 
 
 21
 The report of the Regional Administrator's analyst states as follows:
 
 
 22
 With respect to availability: The State Employment Service (SES) screens applicants seeking employment to determine their employability based upon an analysis of the applicants' previous work history and related credentials. The applicants' names are recorded in the active application file for at least 60 days and then are purged unless an applicant expressly states that he/she desires that it remain in the files in order to locate employment. Therefore, the utilization of the SES data (that there is at least one such applicant on file) is in accordance with 212(a)(14) of the Immigration and Nationality Act, as amended, because these applicants are able, willing, qualified and available for employment at the time of the alien's application for a visa and admission to the United States and at the place to which the alien is destined to perform such labor.
 
 
 23
 In addition, the analyst reported that the employer had refused to place a job bank order for the stated reason that the position was filled by the alien who was "well trained in job" and "(p)roduction does not warrant placing another worker at this time"; and, the analyst added, "This amounts to a refusal to accept referrals from the ISES."[10] The analyst concluded that, on the basis of the foregoing facts, certification should be denied on the ground of availability.
 
 
 24
 The certifying officer denied certification, attaching a copy of the analyst's report as his reason. On administrative appeal Rahman submitted rebuttal evidence in the form of newspaper advertisements for grinders and the same projection of ISES concerning the number of grinder jobs in the Chicago area by 1980 submitted in the Stenographic case, and argued that the availability of a single worker was an insufficient basis for denial of a certificate. The reviewing officer rejected the legal argument that one available American worker was not enough, relied on the ISES data and the company's refusal to place a job bank order after being advised by ISES that a qualified American worker was available, and denied certification on the ground of availability.
 
 
 25
 Rahman then brought this action in the District Court seeking to set aside the denial of certification. The court entered summary judgment in favor of the Regional Administrator without stating its reasons.
 
 Rahman's Standing
 
 26
 The Regional Administrator argues that Rahman lacks standing to sue under § 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702.[11] The interest sought to be protected, it is argued, is not within the zone of interests "protected" by the statute in question, 8 U.S.C. § 1182(a)(14), because that provision was intended to protect the American labor market and not foreign laborers. The test, however, is broader than the Regional Administrator implies. The controlling authority, Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), states that a plaintiff's interest must be "arguably within the zone of interests to be protected Or regulated by the statute . . . in question." 397 U.S. at 153, 90 S.Ct. at 830 (emphasis supplied). We held in Secretary of Labor v. Farino, supra, 490 F.2d at 889, that the employer plaintiffs in that case had standing because, not only had they alleged that they would "be economically injured if not permitted to employ these aliens,"[12] but their interests "as potential employers of aliens are within the zone of interests to be regulated." Similarly, the prospective alien employee would be economically injured if not given a certificate and has an interest which is within the zone of interests to be regulated. Moreover, even if Rahman had to show that his interest is within the zone of interests Protected by the statute, as the Administrator incorrectly suggests is necessary, Rahman would have standing. Although the 1965 amendment to § 212(a)(14), 79 Stat. 911, 917-918, was designed to protect American workers,[13] that provision is part of chapter 12 of the Immigration and Nationality Act, which, Inter alia, states the standards for determining whether given classes of aliens are to be permitted to enter and remain in the United States, and was necessarily intended at least in part for the protection of aliens who are arguably entitled to enter or remain in the United States on the basis of those standards. Cf. Digilab, Inc. v. Secretary of Labor, 495 F.2d 323, 326 (1st Cir. 1974). Accordingly, Rahman was a person adversely affected or aggrieved by the administrative action within the meaning of § 10 of the Administrative Procedure Act, 5 U.S.C. § 702, and has standing to sue.
 
 The Merits
 
 27
 The statement with respect to availability in the analyst's report, quoted above, addresses the two matters found to have been inadequately established in our previous cases, Viz., the qualifications and the continued availability of the domestic workers. Counsel for the applicant did not seek a more detailed explanation of the ISES procedures and, as in the Stenographic case, has not questioned the adequacy of the procedures, as distinguished from the accuracy of the information developed by those procedures. Here, as in Stenographic, the employer refused to place a job bank order. These facts are sufficient to support the administrative action.
 
 
 28
 Rahman also argues that the statutory requirement of available " workers" was not satisfied by a finding that only one worker was available. 1 U.S.C. § 1 provides, however,
 
 
 29
 In determining the meaning of any Act of Congress, unless the context indicates otherwisewords importing the plural include the singular;
 
 
 30
 See also 2A Sutherland Statutory Construction § 47.34 (4th (Sands) ed. 1973). Here the context does not indicate otherwise. Moreover, plaintiff's interpretation would not be in harmony with the primary purpose of the 1965 amendments to § 212(a)(14), which is to protect American workers. Cf. Silva v. Secretary of Labor, 518 F.2d 301, 309-310 (1st Cir. 1975). The single American worker the Administrator found was available is as much entitled to protection as a larger number of workers would be. We read the statutory language as prohibiting certification unless the job cannot be filled by a qualified American worker.
 
 
 31
 The judgments are affirmed.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 The record does not show how the certifying officer learned that the number was nine
 
 
 [2]
 Several other circuits have reached the same result. See, e. g., Seo v. U. S. Department of Labor, 523 F.2d 10, 13 (9th Cir. 1975), and cases cited at Id. n. 3
 
 
 [3]
 In Farino the plaintiffs' administrative appeal letters indicated that "plaintiffs had been unable to find available workers and that the State Employment Service had been of no assistance." 490 F.2d at 890
 
 
 [4]
 The state agency is operated as a part of the cooperative federal-state system established by the Wagner-Peyser Act, 29 U.S.C. § 49, Et seq., which gives the United States Employment Service regulatory authority over state employment agencies. See 29 U.S.C. §§ 49b, 49c And Ill.Rev.Stat. ch. 48, § 172a
 
 
 [5]
 The Regional Administrator's brief explains that ISES has recently, at the behest of the United States Employment Service, replaced its previous manual system of employment-data compilation and retrieval with ESARS. It is unclear from the brief whether the writer intended to state that the method of initiating and maintaining data, including screening applicants and updating files, changed when ISES began using ESARS
 
 
 [6]
 We have even made an independent examination of materials not cited in the briefs in an effort to determine whether it appears as a matter of public record that the procedures are as represented. The results are inconclusive at best
 
 
 [7]
 In Secretary of Labor v. Farino, 490 F.2d 885 (7th Cir. 1973), we held that because counsel for the aliens had challenged, during the administrative proceeding, the reliability of the information-gathering procedures used by the state agency, the Administrator should have provided an opportunity to litigate the issue so raised. That opportunity could consist of either asking the state agency to give plaintiffs a full explanation of its procedures, so plaintiffs could respond in writing, or providing an opportunity to cross-examine the state officials about the information furnished
 
 
 [8]
 In interviewing or testing the worker or workers who are sent to the employer as a result of the job bank order, the employer may conclude that they do not meet all the qualifications reasonably necessary for adequate performance of the job. A showing to that effect would effectively rebut the ISES data. What constitutes reasonably necessary qualifications, as opposed to personal preferences of the employer, is in the first instance determined by the Regional Administrator, whose determination is entitled to great weight but has not always been accepted by the reviewing court. Compare Silva v. Secretary of Labor, 518 F.2d 301 (1st Cir. 1975), with Pesikoff v. Secretary of Labor, 163 U.S.App.D.C. 197, 501 F.2d 757, Cert. denied, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974)
 
 
 [9]
 The record does not show by what authority Mr. Zabarae spoke for the local union or how he acquired the information he passed on to the analyst. The antecedent of "those" ("under his jurisdiction") is grammatically indefinite. If any weight is to be given the information, it must be assumed that the analyst satisfied herself on these points but omitted them in her written report. The reviewing officer obviously made that assumption
 
 
 [10]
 The report of ISES to the Administrator does not appear in the record, but Rahman has not questioned the accuracy of the facts recited by the analyst
 
 
 [11]
 A field memorandum of the Employment and Training Administration (Dec. 4, 1973, p. 5, Item III(B)(2)), states that only an employer can file a request for administrative review. The validity of this provision is challenged in the letter of the attorney requesting the administrative review, which expressly states that the attorney is seeking review on behalf of the alien and not the employer. Although the file contains a copy of a request by the Regional Administrator to the Regional Solicitor for an advisory opinion on the alien's right to seek administrative review, we find no answer. The reviewing officer's decision ignores the problem, erroneously reciting that the administrative appeal was taken by the attorney on behalf of the employer and deciding the appeal on the merits. Accordingly, the Administrator, for reasons not explained, in effect allowed the alien to take an administrative appeal
 
 
 [12]
 Thus meeting the constitutional standing test of "injury in fact," Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)
 
 
 [13]
 See the legislative history set forth in Pesikoff v. Secretary of Labor, 163 U.S.App.D.C. 197, 201-202, 501 F.2d 757, 761-762, cert. denied, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974)