RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0293p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SHASHIKANT PATEL,

*Plaintiff-Appellant*,

*v.*

No. 12-1962

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-01047—Paul Lewis Maloney, Chief District Judge.

Decided and Filed: October 11, 2013

Before: DAUGHTREY, SUTTON, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Michael E. Piston, Troy, Michigan, for Appellant. Troy D. Liggett, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Agnes Kempker-Cloyd, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

KETHLEDGE, J., delivered the opinion of the court, in which SUTTON, J., joined. DAUGHTREY, J. (pp. 10–20), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

KETHLEDGE, Circuit Judge. Peshtal Inc. filed a petition for an employment visa on behalf of Shashikant Patel under 8 U.S.C. § 1153(b)(3). The United States Citizenship and Immigration Services denied the petition. Patel then filed suit in federal district court under the Administrative Procedure Act, challenging the denial as arbitrary

and capricious. The district court dismissed the suit for lack of prudential standing. We reverse.

## I.

Under the Immigration and Nationality Act, an alien can become a permanent resident by obtaining an employment visa. *Matovski v. Gonzales*, 492 F.3d 722, 726–27 (6th Cir. 2007). To do so, the alien must complete a three-step process. *Id.* at 727. First, the alien's potential employer must apply for a labor certification from the United States Department of Labor. 8 U.S.C. § 1153(b)(3)(C); 20 C.F.R. § 656.17(a)(1). The Department will issue the certification if there are no qualified U.S. workers available for the job and the alien's employment "will not adversely affect the wages and working conditions" of other workers. 8 U.S.C. § 1182(a)(5)(A)(i).

Second, the employer must file a petition for an employment visa on the alien's behalf with the United States Citizenship and Immigration Services (CIS). 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). For skilled workers, the CIS will approve the petition if, among other things, the employer has a valid labor certification and the alien has at least two years of relevant training or experience. 8 U.S.C. § 1153(b)(3)(A)(i); 8 C.F.R. § 204.5(l).

Third, the alien must apply to adjust his status to that of a permanent resident. 8 U.S.C. § 1255; 8 C.F.R. § 245.2(a)(3)(ii). The CIS will approve the application if two conditions are met: first, "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence"; and second, "an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

Patel, a native and citizen of India, entered the United States on a one-year visitor's visa in 1999. He overstayed the visa and thereafter began looking for a job that would allow him to obtain an employment visa. Patel found such a job in October 2006, when Deluxe Inn offered him the position of Lodging Manager at its hotel in Lansing, Michigan. Deluxe completed the first step of the status-adjustment process by obtaining

a labor certification from the Department of Labor. But Deluxe faltered at the second step: it filed a petition for an employment visa on Patel's behalf, but the CIS denied the petition because Deluxe "was unable to pay the proffered wage." *See* 8 C.F.R. § 204.5(g)(2).

Patel got a second chance in February 2010, when Peshtal Inc. offered him a job as Lodging Manager at its hotel in Richmond, Indiana. Instead of applying for its own labor certification, however, Peshtal Inc. jumped to the second step of the status-adjustment process and filed a petition for an employment visa on Patel's behalf. In support of that petition, Peshtal Inc. attached the labor certification that Deluxe had received for the Lodging Manager position in Lansing, Michigan. The CIS denied the petition on grounds that Peshtal Inc. had failed to get its own labor certification.

Patel filed suit in federal district court under the Administrative Procedure Act, alleging that the denial of Peshtal Inc.'s petition for an employment visa was arbitrary and capricious. The government moved to dismiss for lack of prudential standing. The district court granted the motion. This appeal followed.

II.

A.

We review de novo a district court's dismissal for lack of prudential standing. *See Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005).

Under the Administrative Procedure Act, a party has prudential standing if he is "adversely affected or aggrieved by agency action[.]" 5 U.S.C. § 702. A party is "adversely affected or aggrieved" if the interest he seeks to protect is "arguably within the zone of interests to be protected or regulated by the statute that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) (internal quotation marks omitted). In determining a statute's zone of interests, "we do not look at [the provision at issue] in complete isolation." *Fed'n for Am. Immigration Reform v. Reno*, 93 F.3d 897, 903–04 (D.C. Cir. 1996) (citing *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 401–02 (1987)). Instead, we look at

that provision alongside any other provision that has an "integral relationship" with it, in order to "help[] us . . . understand Congress' overall purposes[.]"   *Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 529–30 (1991) (internal quotation marks omitted).

The prudential-standing test "is not meant to be especially demanding." *Patchak*, 132 S. Ct. at 2210 (internal quotation marks omitted).   Rather, in enacting the Administrative Procedure Act, Congress intended to "make agency action presumptively reviewable." *Id.* (internal quotation marks omitted).   Thus, a plaintiff lacks prudential standing only if his "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (internal quotation marks omitted).   And because the plaintiff only needs to be "arguably" within the statute's zone of interests, "the benefit of any doubt goes to the plaintiff." *Id.*

Here, Patel alleges that the CIS violated 8 U.S.C. § 1153(b)(3) when it denied the petition for an employment visa that Peshtal Inc. filed on his behalf.   That provision states in relevant part:   "*Visas shall be made available . . . to . . . [q]ualified immigrants* who are capable . . . of performing skilled labor (requiring at least 2 years training or experience) . . . for which qualified workers are not available in the United States." (Emphasis added.)   Given that § 1153(b)(3) expressly provides for issuance of employment visas directly to qualified aliens, it is arguable, to say the least, that a qualified alien who wants an employment visa is within that provision's zone of interests.

The government responds that Patel lacks prudential standing because his interests are inconsistent with the purpose of § 1153(b)(3), which the government says is the protection of U.S. employers and workers.   But it is folly to talk about "the purpose" of the statute when the statute reflects a compromise between multiple purposes.   One can speculate that Congress meant to exclude certain aliens to protect American workers, and admit other, "qualified" aliens to help American employers. But there is no basis in the text of the statute—none—to conclude that Congress was

completely indifferent to the interests of the "qualified immigrants" themselves. To the contrary, § 1153(b)(3) makes employment visas available *to the immigrant*, rather than his employer, which suggests that Congress gave the immigrant, too, a stake in whether he gets a visa. Simply stated, under § 1153(b)(3) it is the alien, not the employer, who is entitled to an employment visa; and that makes unavoidable the conclusion that the alien's interests are among those "protected or regulated by the statute[.]" *Patchak*, 132 S. Ct. at 2210.

Two other provisions corroborate this conclusion. First, 8 U.S.C. § 1255(b) provides that an alien whose petition is approved under § 1153(b)(3) becomes eligible for a permanent visa, rather than a temporary one. If § 1153(b)(3) provided employment visas only for the benefit of U.S. employers (as the government contends), it would be unnecessary to give the alien a permanent visa; instead, a visa that lasted as long as the employer needed the alien's services would do. That Congress rejected that approach in § 1153(b)(3) suggests that the provision protects the interests of aliens as well as employers.

Second, the so-called "portability provisions"—8 U.S.C. § 1154(j) and 8 U.S.C. § 1182(a)(5)(A)(iv)—likewise reflect a congressional intent to protect the interests of qualified aliens. Before Congress enacted these provisions, an approved petition for an employment visa was valid only so long as the alien stayed with the employer that filed it. Thus, if an alien who had an approved petition wanted to change jobs, he would need to start the whole status-adjustment process over again. Because of the portability provisions, however, the alien's petition "remain[s] valid with respect to a new job" under certain circumstances. 8 U.S.C. § 1154(j).

All of these provisions make this case distinguishable from others where the plaintiff lacked prudential standing under the APA. Typically, those cases involved "a provider of government services challeng[ing] the reduction of benefits to a third party because the reduction decreases the demand for the provider's services." *Dismas Charities*, 401 F.3d at 675. Thus, for example, the Supreme Court said that a transcript preparer would lack prudential standing to challenge an agency's refusal to hold its

hearings on the record.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).  This court held that a halfway house lacked prudential standing to challenge the Department of Justice's decision to reduce the number of prisoners that it placed in halfway houses.  *See Dismas Charities*, 401 F.3d at 675.  And the Third Circuit held that an employment agency lacked prudential standing to challenge a decision by the Secretary of Labor that reduced the number of aliens that could enter the country.  *See Intercontinental Placement Serv., Inc. v. Shultz*, 461 F.2d 222, 223 (3d Cir. 1972) (per curiam).  We have nothing of the sort here:  Patel challenges the denial of a benefit that, per the statute's terms, would have gone directly to him.

Of far greater relevance are decisions by three other circuits that hold, on materially indistinguishable facts, that an alien has prudential standing under the APA to challenge the denial of his employer's petition for an employment visa.  In *De Jesus Ramirez v. Reich*, 156 F.3d 1273 (D.C. Cir. 1998), the court held that "aliens are obviously regulated by the statute" and that "neither the statute's text, structure, nor legislative history supplies the requisite clear and convincing evidence of a preclusive purpose."  *Id.* at 1276 (internal quotation marks omitted).  In *Taneja v. Smith*, 795 F.2d 355 (4th Cir. 1986), the court held that the alien "was in the 'zone of interest' of the statute and had standing to challenge" the denial of his prospective employer's visa application.  *Id.* at 358 n. 7.

In *Stenographic Machines, Inc. v. Regional Administrator for Employment and Training*, 577 F.2d 521 (7th Cir. 1978), the court rejected the amorphous "purpose" argument that the government again advances here.  There, the government argued that a predecessor skilled-worker visa provision, 8 U.S.C. § 1182(a)(14), "was intended to protect the American labor market and not foreign laborers."  *Id.* at 528.  Thus, the government said, the alien's interest in the petition for an employment visa that his prospective employer had filed on his behalf "is not within the zone of interests 'protected' by the statute[.]"  *Id.*  The Seventh Circuit disagreed.  The court first noted that the Supreme Court has phrased the relevant test in the disjunctive—"a plaintiff's interest must be arguably within the zone of interests to be protected *or* regulated by the

statute[,]" *id*. (emphasis in original; internal quotation marks omitted)—and then concluded that "the prospective alien employee" had an interest "within the zone of interests to be regulated." *Id.* The court also held that, "even if [the alien] had to show that his interest is within the zone of interests to be *protected* by the statute . . . [the alien] would have standing." *Id*. (emphasis in original). The court's reasoning was straightforward: true, the immigration statute was designed in part "to protect American workers"; but the provisions allowing the *admission* of qualified aliens were "intended at least in part for the protection of aliens who are arguably entitled to enter or remain in the United States on the basis of those standards." *Id.*

Disembodied notions of statutory purpose cannot override what the statute actually says. What § 1153(b)(3) says is that the alien, ultimately, is the one who is entitled to the employment visa. The alien's interest in receiving it is therefore within the zone of interests protected or regulated by the statute. Patel has prudential standing to challenge the denial of his prospective employer's petition for an employment visa.

B.

The district court did not decide whether Patel had constitutional standing, but it suggested that he might not. Given that the process for Patel's application (and litigation) has already dragged on for years, we decide the issue here. To establish constitutional standing, Patel must prove that he suffered an injury in fact that is fairly traceable to CIS's conduct and redressable by a favorable decision. *See Lujan*, 504 U.S. at 560–61. Patel has suffered an injury that is fairly traceable to CIS: the loss of an opportunity to become a permanent resident. The issue is whether that injury is redressable in this lawsuit.

The government argues it is not. Even if the petition's denial is set aside, the government says, it still must approve Patel's application for an adjustment of status. The government suggests that might not happen, in which case this suit would not redress Patel's injury. But the government misunderstands what that injury is. Patel "lost a significant opportunity to receive an immigrant visa" when the CIS denied Peshtal Inc.'s petition on grounds that Patel says were arbitrary. *Abboud v. INS*, 140

F.3d 843, 847 (9th Cir. 1998).  That lost opportunity is itself a concrete injury—and a favorable decision would redress it.  Indeed, the record reflects that Peshtal Inc.'s offer of employment to Patel remains open, and the government (to its credit) conceded during oral argument that CIS could grant Peshtal Inc.'s petition if (as Patel contends) the petition's denial was arbitrary and capricious.  Patel thus has constitutional standing.

## C.

The government also argues that Peshtal Inc.'s failure to appeal the denial of its petition on behalf of Patel means that it has abandoned its petition, which the government says would make this case moot.  But "[w]e doubt that the district court can presume, as a matter of law, that the employer abandoned the [petition] solely because the employer failed to appeal[.]"  *De Jesus Ramirez*, 156 F.3d at 1277.  To the contrary, Peshtal Inc. specifically confirmed to the district court that its employment offer to Patel "[was] still open and [would] continue to be open for the indefinite future."  Moreover, if Patel were to prevail on his underlying lawsuit, the district court would be required to hold the petition's denial unlawful and set it aside.  *See* 5 U.S.C. § 706(2)(A).  That would restore the status quo *ante* with respect to the petition, and make irrelevant Peshtal Inc.'s failure to appeal the denial.

## D.

Finally, having determined that Patel had both prudential and constitutional standing in this case, we decline to go further and address the merits of his claim.  The dissent notes that in three cases cited in this opinion the appellate courts answered the prudential standing question and "went on to hold . . . that the alien-worker plaintiffs were not entitled to relief on the merits."  Dissenting Op. at 12.  But in two of these three cases, the district court had already reached the merits of the plaintiffs' claims.  *See De Jesus Ramirez*, 156 F.3d at 1277; *Taneja*, 795 F.2d at 356.  The district court did not do so here, and we therefore leave these arguments for that court's consideration on remand.

\*       \*       \*

We reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

---

**DISSENT**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge, dissenting**.** The majority's analysis of prudential-standing principles arguably brings plaintiff Shashikant Patel within the "zone of interest" protected by the relevant immigration statutes, but the exercise is basically meaningless in the context of this case. Because prudential standing is a judicial limitation on constitutional standing, most courts conduct a review for Article III standing before considering prudential standing. *See, e.g.*, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (noting that "the absolute purity of the rule that Article III jurisdiction is always an antecedent question"). Although the district court did not follow this practice, we certainly have the authority to do so – and should. Nevertheless, the majority tackled the jurisdictional questions in reverse order, treating prudential standing at length while giving only brief attention to the issue of standing under Article III. Because I conclude that the plaintiff's presence in "the zone" is irrelevant to the outcome of this case, I offer a different analysis in dissent. In my judgment, Patel lacks Article III standing because, having failed to satisfy a condition precedent, he has not established – and cannot establish – redressability, a *sine qua non* of constitutional standing. For this reason, the district court was correct in dismissing the complaint for lack of jurisdiction. That should be the end of this case.

Having reached a contrary conclusion, however, the majority has ordered a remand to the district court, directing the court to conduct "further proceedings consistent with this opinion." In many instances what would come next would be reasonably clear; in this case, the path is not so obvious. The question is what those further proceedings would be, other than futile. Were I the district judge on remand, I might consider beginning where I should have started in the first place: with a review of Article III standing. But the majority has seemingly short-circuited that option by holding – incorrectly, in my judgment – that Patel has constitutional standing. The next possibility is a decision on the USCIS motion to dismiss under 12(b)(6) for failure to

state a claim and, if that motion is denied, a decision on the merits. The ultimate decision is available to us because the facts in this case are undisputed, leaving only questions of law that we can review as easily as can the district court, thereby avoiding the burden of an unnecessary remand. As one court faced with the same situation has noted, "The jurisdictional and merits issues in these [immigrant labor certification] cases are *inextricably linked*." *De Jesus Ramirez v. Reich*, 156 F.3d 1273, 1278 (D.C. Circuit 1998) (emphasis added). None more so than here, as a brief restatement of the administrative record will show.

Finally, "zone of interest" aside, I do not believe that Patel has established prudential standing.

**Procedural Context**

Patel, a citizen of India, had overstayed his visa in 2000 and was facing removal proceedings. In an effort to avoid that consequence, he repeatedly sought to adjust his status to that of a lawful permanent resident, based upon a potential employment opportunity. As explained in *Matovski v. Gonzales*, 492 F.3d 722, 727 (6th Cir. 2007), in order to do so:

> [An] alien must successfully complete a three-step process. The alien's potential employer initiates the first two stages. First, the employer files [a Form 9089] Application for Alien Employment Certification, with the Department of Labor. The Department of Labor grants certification where it can be shown that there are insufficient qualified U.S. workers available and willing to perform the work at the prevailing wage paid for the occupation in the area of intended employment. 8 U.S.C. § 1153(b)(3).
>
> If the Department of Labor approves the Application for Alien Employment Certification, the employer may then file an I-140, Petition for Alien Worker with the [USCIS, an agency in the Department of Homeland Security]. The [USCIS] examines evidence filed with the petition to decide whether the alien is eligible for the benefit requested. For example, the [USCIS] would determine whether an alien (1) has a labor certification; and (2) meets the minimum requirement of two years of specialized training or experience needed for the alien to qualify as a "skilled worker." 8 U.S.C. § 1153(b)(3)(A)(i).

> If the [USCIS] approves the I-140, the alien files an I-485 Application to Register Permanent Residence or Adjust Status, the third and final stage of the employment-based adjustment of status process.

In other words, the Department of Labor first certifies the position as open to a non-citizen worker (by approving Form 9089), and the USCIS certifies the proposed non-citizen worker as meeting the minimum requirements of the position (by issuing Form I-140, supported by Form 9089).  If the prospective employer succeeds in securing approval from both agencies and the prospective employee is already in the United States, either of them may file a Form I-485 application with the USCIS for an employment-based adjustment of the employee's status to that of a permanent resident. If the non-citizen is out of the country at the time, either may apply for an immigrant visa allowing the employee to enter the United States and begin working.

**Factual Background**[1]

In October 2006, Deluxe Inn, a motel in Lansing, Michigan, filed a Form 9089 with the Department of Labor on Patel's behalf.  In that application, Deluxe Inn claimed that it was offering Patel a position as a lodging manager at an hourly wage of $22.28, or $46,342 per year, that it had advertised the position previously through a notice in two issues of a local newspaper, but that no qualified American workers had applied for the job.

The Department of Labor issued a labor certification, which Deluxe Inn then attached to its Form I-140 Immigrant Petition for Alien Worker, which it filed with the USCIS under the provisions of 8 U.S.C. § 1153(b)(3)(A)(i).  Pursuant to agency regulations, among other things an I-140 petition "must be accompanied by evidence that

---

[1] The recitation of facts that follows is useful because the record is at least partially misstated in the majority opinion, which appears to confuse the employer's submission of the initial Department of Labor Form 9089 for labor certification (step one of the process) with the employer's submission of the USCIS Form I-140 petition (step two) and then asserts that what the USCIS denied was Comfort Inn's "petition for an employment visa on Patel's behalf" (which would have been step three).  But that is *not* what the USCIS denied.  Because Comfort Inn did not file its own Form 9089 and thereby skipped step one, the USCIS denied approval of the I-140 petition at step two.  And, because Patel had been in the country for some ten years, he was not seeking an immigrant *visa*, which would authorize entry from outside the United States for employment purposes, but an adjustment of his status as an illegal alien to that of a permanent legal resident.

the prospective United States employer has the ability to pay the proffered wage . . . at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence." 8 C.F.R. § 204.5(g)(2) (2012). When Deluxe Inn was unable to provide such evidence, the USCIS denied the I-140 petition on April 30, 2009, citing the prospective employer's inability to pay the proffered salary. Deluxe Inn could have appealed that decision but did not do so, and Patel does not challenge the agency's action. That decision also resulted in the USCIS's rejection of Patel's dependent I-485 application for adjustment of status to that of a lawful permanent resident. Put simply, Deluxe Inn succeeded at step one of the process but failed at step two.

A few months later, a different employer, Peshtal, Inc., doing business as Comfort Inn, filed a new I-140 petition with the USCIS, naming Patel as a prospective lodging manager at its motel in Richmond, Indiana. However, the petition was not supported by a new Department of Labor certification (Form 9089) showing that Comfort Inn had tried to hire locally without success, as required by 8 U.S.C. § 1182(a)(5)(A)(i)(I). Instead, Comfort Inn merely attached a copy of the Form 9089 approval that had been submitted previously by Deluxe Inn for a different location in an entirely different state. The USCIS denied this second I-140 application, explaining that Comfort Inn had failed to secure approval from the Department of Labor specific to Comfort Inn or to provide evidence establishing its successorship to Deluxe Inn, the only way it could rely upon the same Form 9089 that Deluxe Inn had submitted in support of its own I-140 petition. Put simply, Comfort Inn failed at step one and, therefore, could not succeed at step two.

Comfort Inn did not exercise its right to appeal the denial of its I-140 application and is not a party to this action. Instead, Patel himself filed suit against the USCIS in federal district court pursuant to 5 U.S.C. § 702, alleging that the administrative denial of Comfort Inn's I-140 application was arbitrary, capricious, and otherwise not in accordance with law because it did not include a statement of reasons for the denial – an allegation thoroughly belied by the lengthy explanation provided in the agency's decision, covering in detail its reasons for the denial of both the Deluxe Inn and the

Comfort Inn applications.  In the complaint, Patel asked the district court to "compel the USCIS to approve [Comfort Inn's I-140 application]," even though there was no valid Form 9089 from the Department of Labor to support it – a complete failure to satisfy the condition precedent established by statute in 8 USC § 1182(a)(5)(A)(i).

The USCIS filed a motion to dismiss the complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief could be granted, under Rule 12(b)(6).  The district court granted the motion to dismiss under Rule 12(b)(1), concluding that:

> Patel lacks [prudential] standing to seek judicial review of the denial of Comfort Inn, Inc.'s, Form I-140 petition.  Even if Patel could establish constitutional standing, Patel's complaint seeks to litigate the rights and interests of a third party.  Additionally, Patel does not fall within the zone of interests of the [applicable] statute.

Patel appealed the district court's decision, arguing that the court erred in finding that he lacked prudential standing and alleging that the error "prohibited [him] from filing [the I-140 petition]" that the USCIS had denied Comfort Inn, presumably in support of an I-485 petition for adjustment of status.

As previously noted, the majority here has reversed the district court's judgment, concluding that Patel has satisfied the requirements of standing, both constitutional and prudential, under § 10 of the Administrative Procedures Act.  Postponing for the present a discussion of prudential standing, I turn first to the majority's analysis of Article III standing – and find it lacking.

**Article III Standing**

"To satisfy Article III's standing requirements, a plaintiff must plead a concrete, particularized, and imminent injury in fact caused by the defendant that a favorable judicial outcome would likely remedy." *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 813 (6th Cir. 2012).  Thus, at a minimum, in order to establish constitutional standing to bring an action in federal court, a plaintiff must demonstrate "injury in fact, causation, and redressability." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir.

1999) (citing *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)).  Arguably, Patel has suffered an injury – without a valid I-140 certification, he cannot apply for adjustment of status to that of a permanent resident, and without a successful adjustment of status, he is subject to removal proceedings.

In terms of causation, Patel claims that his injury is the result of the USCIS's wrongful refusal to issue the I-140 certification.  Not so.  The actual cause was Comfort Inn's failure to supply a valid Form 9089 certification from the Department of Labor in support of its I-140 application to the USCIS, making his prospective employer the actual source of the wrong visited on Patel, not the USCIS.

More significantly, the real sticking point in this case is Article III's redressability requirement, *i.e.,* that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009).  In his amended complaint, Patel included only two specific prayers for relief: a request, first, that the district court set aside the denial of Comfort Inn's I-140 petition and, second, that the court compel the USCIS to approve that petition.  However, without the Department of Labor's Form 9089 certification, a valid I-140 petition cannot be issued.  As a result, the only way to redress Patel's plight would be to order Comfort Inn to start the alien-employment process anew, submitting its own Form 9089 application to the Department of Labor for certification of the position in Richmond, Indiana.  But Comfort Inn is not before the court, nor is the Department of Labor, which *might or might not approve a Form 9089 for the Indiana position*.  And, finally, Patel's actual interest, approval of his Form I-485 for adjustment of status, is completely out of reach, because the ultimate decision to grant or deny an I-485 petition rests not with this court nor with the district court but, in the event of dispute, in the sole discretion of a separate, independent administrative agency within the Department Justice.

Hence, even at best, the possibility of redressability here is "speculative" rather than "likely," and cannot satisfy Article III's standing requirements.

**Prudential Standing**

But even if Patel could establish constitutional standing, and even if it could be concluded that Patel falls within the immigration statutes' zone of interest, that fact alone is insufficient to establish prudential standing under Sixth Circuit case law. In *Coyne*, we recognized that prudential standing requires "*[f]irst*, [that] a plaintiff must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" 183 F.3d at 494 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added)). It is clear to me, if not to my colleagues, that Patel cannot be said to assert any rights other than third-party Comfort Inn's. If Comfort Inn had succeeded in securing approval of a valid Form 9089 from the Department of Labor and the issuance of the ensuing I-140 certificate from the USCIS before dropping out of the picture, perhaps then Patel would be in a position to "assert his own legal right[] and interest[]" to an adjustment of status through a I-485 petition.[2] But, there was no possibility of Patel's securing an adjustment of his status in this case, because Comfort Inn failed to submit a valid Form 9089 request to the Department of Labor, which therefore denied certification of the position, causing the USCIS to deny the I-140 petition approving Patel for employment in the certified position, which was the prerequisite for approval of Patel's I-485 petition.

As a result, the majority's conclusion that "hold[ing] the denial [of the I-140 certificate] unlawful and set[ting] it aside . . . would restore the *status quo ante* with respect to the petition" is plainly incorrect. The majority presumes that Patel could then go forward in an effort to secure adjustment of his status to that of a permanent resident. However, a successful petition for adjustment of status (step three) is dependent on approval of an I-140 petition (step two), which in turn is dependent on the certification

---

[2]Indeed, that was precisely the posture of the plaintiff in the Fourth Circuit case relied upon by the majority, *Taneja v. Smith*, 795 F.2d 355 (4th Cir. 1986). Taneja's prospective employer had secured a Department of Labor certification, but the effort to secure a visa fell short when the employer failed to convince the INS (now the USCIS) that the position offered Taneja was full-time. Taneja then sued the Attorney General and the INS District Director, seeking to compel the issuance of a visa. When the government argued that Taneja lacked prudential standing, the Fourth Circuit indicated in a footnote, *id.* at 358 n. 7, that he was "in the zone of interest" for purposes of prudential standing, but went on to deny relief on the merits because the employer had "withdrawn its sponsorship of the visa application." *Id.* at 358.

of a position based on a Form 9089 request (step one).  And here, Comfort Inn did not submit a valid Form 9089, relying instead on the inapplicable Form 9089 submitted by Deluxe Inn.  As a result, there simply is no *status quo ante* to restore in this case.

**Portability**

But even if the district court could resolve the standing dispute in Patel's favor, the court would next have to consider the USCIS's motion to dismiss under Rule 12(b)(6).  In his complaint, Patel based his entire premise that the USCIS should have approved Comfort Inn's I-140 petition on the "portability" provisions of applicable statutes, arguing that Comfort Inn was  authorized to submit Deluxe Inn's Form 9089 labor certification in support of Comfort Inn's I-140 application.  This claim is, however, wholly incorrect.  Under 8 U.S.C. § 1182(a)(5)(A)(iv) and § 1154(j), portability applies *only* to approved I-140 petitions; a Form 9089 certification is *not* portable.  Moreover, the contention in Patel's complaint to the contrary completely misperceives the entire purpose behind the statutory amendments that created portability.  As the Ninth Circuit recently noted in *Herrera v. U.S. Citizenship and Immigration Services*:

> In 2000, Congress recognized that long delays by the agency in processing I-485 applications were causing practical difficulties for some applicants.  *See, e.g.*, 146 Cong. Rec. 8437 (2000), *also reported* at 146 Cong. Rec. S4191-01, *S4191 (daily ed. May 18, 2000) ("All of us have heard the horror stories of the long delays in processing naturalization and immigration applications.  What was once a 6-month process has now become a 3-to 4-year ordeal." (statement of Sen. Feinstein)).  One practical problem concerned aliens, like Herrera, who were *working pursuant to an approved I-140 petition*.  An I-140 petition is filed by the employer, not by the employee.  Before Congress enacted the Portability Provision, a beneficiary employee of an I-140 petition could not change jobs and still receive the benefit of the I-140 petition.

571 F.3d 881, 886 (9th Cir. 2009) (emphasis added).

Moreover, under agency regulations, Deluxe Inn's Form 9089 became invalid when the USCIS denied the I-140 application submitted by Deluxe Inn on the basis of inability to pay the proffered salary.  *See*. 20 C.F.R. § 656.30(b).  As a result, Deluxe Inn's Form 9089 could not be used to support Comfort Inn's I-140 application because

it was no longer valid.  Portability under 8 U.S.C. §§ 1154(j) and 1182(a)(5)(A)(iv) is available *only* in the event of a *valid* I-140 certification and *only* after an I-485 application to adjust status has been pending for at least 180 days.  Neither circumstance has occurred in this case.  As a result, it is clear that if the case is remanded, the USCIS's Rule 12(b)(6) motion would have to be granted, because portability was inapplicable.

**The Merits**

It is equally clear that if Patel could somehow proceed past the motion stage of this litigation, he could not succeed on the merits.  The most obvious defect in the case, as noted above, is Comfort Inn's failure to comply with step one of the three-step process.  Instead of submitting an appropriate application for a Form 9089 certification of the motel manager's position offered to Patel, Comfort Inn submitted an invalid Form 9089 to the USCIS, effectively jumping over step one of the process involving the Department of Labor.  Hence, the effort to secure approval of Comfort Inn's I-140 petition was destined to fail early on.

The likelihood of success suffered another fatal blow when Comfort Inn failed to appeal the denial of its I-140 application administratively.  In an opinion from the District of Columbia Circuit cited by the majority for the proposition that failure of the employer to appeal does not necessarily denote abandonment of its petition, the court held that although the employer's failure to appeal the denial of a labor certification did not *moot* the case or *require dismissal for failure to exhaust administrative remedies*, it nevertheless doomed the case on its merits:

> We conclude that the Secretary of Labor is always justified (assuming the regulations are valid) in denying an application for labor certification where the employer withdraws from the administrative review process and fails to request review of an adverse decision by the Certifying Officer.  In other words, *no alien's claim challenging a labor certification denial in federal court can ever succeed on the merits if the employer has abandoned the administrative process before its completion.*  This conclusion is implicit both in the regulatory scheme in general, and in the Secretary's decision in these cases to allow the Certifying Officer's determination to become the agency's final decision simply because the employer failed to seek administrative review.  We

> think our resolution of the case — *that the regulations make the employer an indispensable party to the certification process* — is the more appropriate means of expressing the conclusion underlying the district court's exhaustion and mootness analysis. At the end of the day, the result is the same: the aliens' claims must be dismissed.

*De Jesus Ramirez*, 156 F.3d at 1278 (emphasis added) (footnote omitted).

Finally, there is no merit to Patel's claim that the USCIS's denial of Comfort Inn's I-140 petition was arbitrary or capricious. The only basis for the claim set out in the complaint is that the original Form 9089, once approved by the Department of Labor for the Deluxe Inn position, was "portable" and, thus, available as support for the position at the Comfort Inn. But that simply is not the case, as discussed above. Moreover, it is correct, as the majority here points out, that the Seventh Circuit in *Stenographic Machines, Inc. v. Regional Administrator for Employment and Training*, held that "[a] plaintiff seek[ing] to set aside an administrative determination . . . denying an application from an employer for an alien employment certification [Form 9089] " comes within the zone of interest protected by the alien-worker statute and regulations. 577 F.2d 521, 523 (7th Cir. 1978). But, although the Seventh Circuit could have held, on the merits, that the defendant Department of Labor's decision to deny certification based on the availability of a *single* qualified American worker was arbitrary and capricious, it declined to do so, finding in favor of the Department of Labor instead.

Indeed, in all three of the circuit court cases cited by the majority to support the proposition that Patel falls in the zone of interest regulated by the applicable immigration statutes, *i.e.*, *De Jesus Ramirez*, 156 F.3d at 1277, *Taneja*, 795 F. 2d at 358, and *Stenographic Machines*, 577 F.2d at 528, having addressed prudential standing, the courts went on to hold on the merits that the alien-worker plaintiffs were not entitled to relief on the merits. Because this litigation is hopeless, we should do the same.

In summary, even conceding, *arguendo*, that Patel comes within the "zone of interest" regulated by the statutes and regulations set out above, I nevertheless would not concede that he has established standing, either constitutional or prudential, or that he has stated a claim on which relief may be granted. And even if Patel could survive a

motion to dismiss, there is plainly no merit to his claim as a matter of law.  I would, therefore,  affirm the district court's judgment, and I respectfully dissent from the majority's decision to do otherwise.